Daniel KIRSCH, Plaintiff–Appellant–
Cross–Appellee,

v.

FLEET STREET, LTD., Manny Haber,
Steven Haber, Alan Haber, Defendants–
Appellees–Cross–Appellants.

Docket Nos. 96–9631, 97–7021.

United States Court of Appeals,
Second Circuit.

Argued Nov. 19, 1997.

Decided June 25, 1998.

Arthur M. Wisehart, New York City (Heather Boshak, Wisehart & Koch, New York City, on the briefs), for Plaintiff–Appellant–Cross–Appellee.

Adin C. Goldberg, New York City (Epstein Becker & Green, New York City, Whitman Breed Abbott & Morgan, New York City, on the briefs), for Defendants–Appellees–Cross–Appellants.

Before: KEARSE, LEVAL, and FRIEDMAN, Circuit Judges [*].

KEARSE, Circuit Judge:

Plaintiff Daniel Kirsch, who prevailed before a jury on his claim against defendants Fleet Street, Ltd. ("Fleet Street" or the "company"), et al., for constructively terminating his employment in willful violation of the Age Discrimination in Employment Act ("ADEA" or the "Act"), 29 U.S.C. §§ 621 et seq. (1994), appeals from a final judgment of the United States District Court for the Southern District of New York, Dominick L. DiCarlo, Judge [**], awarding him $190,000 in double damages, plus interest and attorneys' fees, following a second trial on damages after Kirsch's refusal to accept a remittitur for a judgment that would have awarded him $232,748. On appeal, Kirsch contends principally that the district court erred in ordering the second trial and that he is entitled to have the original judgment, which awarded him double damages of $530,000, reinstated; alternatively, he contends that he is entitled to a new trial on damages because the district court erred at the second trial in excluding certain evidence and in instructing the jury. He also contends that he is entitled to a new trial on one of his state-law claims and that the district court erred in denying him additional relief on his ADEA claim and higher attorneys' fees. Defendants cross-appeal from the denial of their motion for judgment as a matter of law on the ground that the evidence was insufficient to support the first jury's findings. Finding no reversible error, we affirm.

## I. BACKGROUND

From 1970 to 1991, Kirsch was employed by Fleet Street, a privately-held company that designed, manufactured, and sold women's and children's outer garments to retailers. Defendant Manny Haber was Fleet Street's founder and president; defendants Alan Haber and Steven Haber, respectively Manny's brother and son, were officers and directors. The evidence at the first trial, taken in the light most favorable to Kirsch, revealed the following events.

### A. Kirsch's Relationship With Fleet Street

Kirsch became affiliated with Fleet Street in 1970 at the age of 42. He was hired as a "road salesman" for a territory that included New York, New Jersey, eastern Pennsylvania, and eventually New England. With the exception of sales to certain "house accounts," which included retail stores owned by the Habers, Kirsch was to receive a 5% commission on all sales of Fleet Street merchandise within his territory, whether or not he made the sale. By 1989, he was earning an average of $80,000–$100,000 per year in commissions.

From March 1985 until April 1990, Kirsch was also a "sales administrator." In that capacity, in addition to handling his own sales responsibilities, he acted as a liaison between Fleet Street and its road sales representatives ("road reps"), providing them with information as to such matters as the

[*] Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

[**] Of the United States Court of International Trade, sitting by designation.

company's inventories, promotional merchandise, and product lines. For these additional duties, Kirsch was paid a salary of $200 per week. He was not, however, a supervisor of the road reps; he had no authority to hire or fire, to fix their compensation, to set their schedules, or to tell them how many hours they must work for the company in a given day.

In 1985, Alan Haber was the company's sales manager and Kirsch's supervisor. Alan had the power to hire and fire. In 1987, Steven Haber joined Fleet Street and became sales manager. Steven was 19 years of age and had no prior experience as a sales manager or administrator. At a semi-annual sales meeting after Steven became sales manager, five of the company's six road salespersons other than Kirsch were summarily fired; the sixth was "forced out" within the year. (Transcript of First Trial ("First Tr.") 88.) All six were over the age of 50. Kirsch had no advance warning of the firings; he did not attend the meetings in which the individual road reps were terminated; and the Habers did not inform him thereafter of the reasons for the terminations. Kirsch testified that in the wake of these firings Alan Haber reassured him that he need not be apprehensive about his own status; sometime thereafter, however, Steven Haber told Kirsch at a sales meeting, "You better watch your ass. If you look around, you see all young people." (First Tr. 94.)

In April 1990, Alan Haber informed Kirsch that, although Kirsch's duties and responsibilities would remain the same, and although he would be expected to maintain his same level of sales, Fleet Street was changing Kirsch's compensation. Instead of the 5% commission on all non-house-account sales in his territory, which previously had brought him $80,000–$100,000 a year, the company would pay him a fixed annual salary of $60,000; it would also pay him an "override" of 2% on sales to his customers to the extent that those sales exceeded $2 million per year. Kirsch objected; but he testified that Alan Haber told him that if he fought the change, Fleet Street would fire him. Kirsch continued at Fleet Street until May 1991.

In May 1991, Fleet Street hired Gail Kedrus, age 38, to be its national sales director. Kedrus had previously been director of sales at other garment manufacturing companies, where she had been responsible for 10–person and 15–person sales staffs. At Fleet Street, she was placed in charge of sales and discipline of the sales staff and was given responsibility for finding new growth opportunities, developing marketing strategies, and pursuing new accounts. Her annual salary was to begin at $80,000, and she was promised a share of company profits in the future.

Kedrus testified that prior to being hired by Fleet Street, she had several interviews with Manny Haber, Alan Haber, and Steven Haber. In the course of the interviews, Kedrus inquired about the staff who would be reporting to her; Manny said there would be four salespersons, whose names he did not mention but whom he proceeded to describe. One was said to be a well-respected salesman about Kedrus's age; one was described as a young and very energetic person who was "upcoming" in the company; one was described as a longtime employee who handled closeouts; and the fourth was described only as a person who "would probably not be there when [Kedrus] started." (First Tr. 718.) Kedrus later learned that that fourth person was Kirsch. Manny Haber did not explain why he expected Kirsch to leave Fleet Street. When Kedrus thereafter asked specific questions about personnel and company strategies, Manny "deferred" to Steven (First Tr. 741), who responded "that the company was interested in new younger vision, new younger blood" (First Tr. 728; see also id. 741).

Kedrus began work at Fleet Street in mid-May 1991. At the end of May, Alan Haber informed Kirsch, then age 63, that Fleet Street would no longer pay him $60,000 a year, and that his salary would be cut to $26,000. Alan also told Kirsch that Kirsch's largest account, Stern's, would be reassigned to Kedrus. Sales to Stern's had averaged approximately $750,000 a year, constituting some 40–45% of Kirsch's sales. Kirsch testified that he told Alan Haber that he could not live on $26,000 and that it seemed to him

that Fleet Street had decided, when its prior reduction in compensation had not caused Kirsch to resign, that the company would make him an even more onerous offer that he could not possibly accept; Alan Haber nodded. Kirsch did not accept the offer; he promptly left Fleet Street's offices and never returned.

During the next year and a half, Fleet Street made severance payments to Kirsch totaling $20,769, the equivalent of 18 weeks' pay at the $60,000 salary level. Kirsch sought other employment. In September 1992 he became a salesman for another company ("Tomen"), working for a 5% commission and earning $30,635 in 1992, $21,759 in 1993, and an unspecified sum in the first half of 1994, which the court later estimated at $10,880.

In June 1994, Tomen laid Kirsch off. Within two weeks, he and his wife sold their home in New York and moved to Florida. Kirsch testified that that move did not reflect a decision on his part to leave the workforce. He stated that they moved to Florida because the cost-of-living there was lower and he had been unable to obtain employment in New York, and that he had intended to continue working until age 70. However, he testified that the extent of his efforts to look for work after moving to Florida was to inform some of his New York acquaintances that he was available to show their products in Florida. He testified that when he and his wife moved to Florida, "I retired." (First Tr. 164.)

B. *The First Verdict*

Kirsch commenced the present action in 1992, alleging principally that the events of May 1991, namely the reduction of his salary from $60,000 to $26,000 and the transfer of the Stern's account, amounted to a constructive termination of his employment; that he was discharged because of his age, in violation of the ADEA, 29 U.S.C. §§ 621 *et seq.*, and state law; and that, in terminating him, Fleet Street had acted willfully. Kirsch sought, *inter alia*, backpay, doubled as provided by the ADEA for willful violations, *see* 29 U.S.C. §§ 626(b), 216, and an award of attorneys' fees. As eventually amended, the

complaint also alleged that during the period 1984–1989, Fleet Street had improperly deprived Kirsch of commissions to which he was entitled, in violation of the New York Labor Law, *see* N.Y. Labor Law §§ 191, 198 (McKinney 1986) (the "labor law claim").

After discovery, the case was tried to a jury, and Kirsch presented evidence as to the above events. At the close of Kirsch's case, defendants moved for judgment as a matter of law, arguing, to the extent pertinent to this appeal, that there was insufficient evidence to support findings of discrimination and constructive discharge. The court denied the motion. Before the case was submitted to the jury, defendants unsuccessfully "renew[ed]" their motion on the same grounds. (First Tr. 1130.)

In the meantime, defendants presented evidence to show that the changes in Kirsch's compensation had been motivated by legitimate financial concerns, and that Fleet Street had lowered the compensation of not just Kirsch but other salespersons as well. Manny Haber testified that the Stern's account was transferred to Kedrus in 1991 because Fleet Street sales to that retailer had been declining for two years and Kedrus had personal ties with buyers at Stern's and associated companies that could revitalize that business. Manny Haber also testified that there was no intent on his part or the company's to force Kirsch to leave Fleet Street.

In disputing Kirsch's state labor law claim, on which Kirsch could not prevail unless he was an employee of Fleet Street, rather than an independent contractor, *see* Part III.D. below, defendants presented evidence that during the period 1970–1989, Kirsch was not required to spend time in Fleet Street's offices, was free to set his own hours and take vacation at will, was allowed to sell merchandise on behalf of other companies, and was not reimbursed for his expenses. Defendants also presented evidence that during that period, Fleet Street did not withhold Social Security or income taxes for Kirsch and did not provide him with employee benefits such as health insurance, whereas after Kirsch's compensation was changed from commission to salary in 1990, Fleet Street

did withhold such taxes and provide him with such benefits. Defendants also introduced a February 1990 job description, prepared at Kirsch's direction, which stated that Kirsch was "independently employed."

In submitting Kirsch's ADEA claim to the jury, the district court instructed that

[i]f you ... are persuaded by a preponderance of the evidence that age was a motivating factor in the defendants' decision to reduce plaintiff's salary and take away plaintiff's largest account, then you must find for the plaintiff, unless the defendants persuade you by a preponderance of the evidence that the defendants would have made the same decision even if they had not taken the illegitimate factor of age into account.

(First Tr. 1206.) The court rejected defendants' contention that the evidence was insufficient to warrant such an instruction. As to Kirsch's labor law claim, the court instructed the jury that

Mr. Kirsch is entitled to recover on [ ]his claim only if he was an employee of Fleet Street prior to early 1990....

An employee may generally be defined as a person who undertakes to perform services or to do work under the direction and control of another for compensation. An employer may generally be defined as one who hires another to do certain work and who has a right of control over the performance of the work to the extent of prescribing the manner in which it is to be executed.

An independent contractor may generally be defined as a person who undertakes to perform services for compensation not under the direction and control of the business for whom he is performing the services.

This determination as to whether Mr. Kirsch was an employee or an independent contractor when he was performing the salesperson function is to be made from the totality of the facts and circumstances of this case.

(First Tr. 1210–11.)

The jury returned its verdict on a special form that posed various questions as to, *inter alia*, defendants' treatment of and animus toward Kirsch, Kirsch's damages, and his efforts to mitigate damages. As to liability on the ADEA claim, the jury found that age was a motivating factor in defendants' decision to reduce Kirsch's compensation and reassign the Stern's account; that although defendants offered a non-age-based reason for the reductions and reassignment, that reason was a pretext for age discrimination; and that the changes in Kirsch's compensation and customer base were so intolerable that a reasonable person in Kirsch's shoes would have felt compelled to resign. The jury also found that defendants' discriminatory conduct was willful.

The jury found that Kirsch had suffered actual damages in the amount of $265,000. It found that he had made a diligent search for other work after leaving Fleet Street in May 1991, but not after he "retired" to Florida in June 1994 (*see* Verdict Form Question 7 ("Did plaintiff make a diligent search for other work in the period after he retired to Florida in June 1994?")). Although asked to make a finding as to the amount Kirsch would have earned if he had made a diligent search for work after June 1994, the jury did not respond. And though instructed that it could award Kirsch "damages for future lost wages, sometimes called front pay" (First Tr. 1207) if it found that such damages were caused by the constructive discharge, the jury found that he had suffered no future damages.

As to the New York Labor Law claim, the court had rejected Kirsch's request that the jury be given a number of discrete factual questions and that court itself later determine, based on the jury's answers, whether Kirsch was an employee within the meaning of that statute. Instead, the jury was asked whether Kirsch was "an employee or an independent contractor under the New York Labor Law when making sales" in 1970–1989. (Verdict Form Question 11.) The jury found that he was an independent contractor.

Before discharging the jury, the court asked the parties whether, in light of the verdict, either side wished to submit further questions; both sides declined.

The district court entered judgment awarding Kirsch, *inter alia,* backpay damages of $530,000, doubling the actual damages found by the jury, in light of the jury's finding that defendants' ADEA violation was willful. Kirsch moved for additional relief in the form of reinstatement to his position at Fleet Street, at the level of compensation Fleet Street had paid Kedrus, and moved for attorneys' fees. The court denied reinstatement, *see* Part III.C.2. below, and reserved decision as to attorneys' fees.

Defendants moved under Fed.R.Civ.P. 50 and 59 for judgment as a matter of law, challenging the sufficiency of the evidence supporting the jury's findings of discrimination, constructive discharge, and willfulness; they moved in the alternative for a new trial or a remittitur, contending that the verdict was not supported by the evidence. In an Opinion and Order dated July 15, 1996 ("July 1996 Posttrial Order"), the district court denied the motion for judgment as a matter of law, and denied the motion for a new trial on the liability issues, but granted so much of the motion as sought a remittitur or a new trial on damages. The court found the jury's award of $265,000 unsupportable in light of (a) the evidence that Kirsch's annual compensation at the time of his constructive discharge was $60,000, plus no more than $5,000 in fringe benefits, and (b) the fact that Kirsch had retired in June 1994. The court rejected Kirsch's contention that the jury had permissibly calculated his damages on the basis of the salary and fringe benefits paid to Kedrus ($80,000 plus $15,000), because the court reasoned that Kedrus's position was not sufficiently similar to that of Kirsch to serve as a valid basis for calculating his damages. The court concluded that given the evidence of Kirsch's $60,000 salary plus no more than $5,000 in benefits, his total Fleet Street compensation from May 1991 to June 1994 (three years and one month) would have totaled $200,417; from this, the court subtracted (a) the $20,769 in severance payments Kirsch received from Fleet Street, and (b) $63,274 as his post-termination earnings from Tomen, leaving a total of $116,374 as a justifiable backpay calculation. Doubling that amount for the willfulness of the violation, the court concluded that Kirsch was entitled to a backpay award of no more than $232,748. The court offered Kirsch the choice between a remittitur to that amount and a new trial on the issue of damages.

## C. *The Second Trial on Damages*

Kirsch rejected the remittitur award, and a new trial, limited to the issue of damages, was conducted before a second jury. Based on Kirsch's retirement in June 1994, the new jury was instructed to determine Kirsch's damages for the three-year period from June 1991 to June 1994. (This more accurate three-year period, rather than the three-year-and-one-month period referred to at earlier stages of the proceedings, was used because Kirsch's 1991 termination occurred at the end, not the beginning, of May.)

At the new trial, Kirsch attempted to introduce evidence of the 1991 salaries paid to Kedrus ($80,000, plus $15,000 in fringe benefits), Steven Haber ($162,600), and Alan Haber ($200,000), and the 1990 compensation of Bruce Lustig ($152,992), a salesperson who handled large, important accounts. The court ruled this evidence inadmissible because each of those persons, though having some sales responsibilities, held positions that were not sufficiently similar to that of Kirsch. The court ruled that Steven and Alan Haber's positions were not comparable for the additional reason that both were members of the family that owned and ran the company.

The second jury found that Kirsch's backpay damages totaled $95,000. Giving effect to the first jury's finding of willfulness, the court doubled that amount and entered judgment for $190,000, plus interest. As discussed in Part III.E. below, the court awarded Kirsch $89,475 in attorneys' fees.

Both sides have appealed. Kirsch contends principally that the district court erred in setting aside the first jury's damages award; he also challenges various rulings at each trial, as well as rulings with respect to the scope of relief. Defendants, on their cross-appeal, contend that Kirsch failed to present sufficient evidence to support several elements of his ADEA claim, thus entitling them to judgment as a matter of law. Be-

cause defendants' contentions, if meritorious, would dispose of most of the issues raised by Kirsch, we address the cross-appeal first.

## II. DEFENDANTS' REQUEST FOR JUDGMENT AS A MATTER OF LAW

The ADEA prohibits an employer from, *inter alia*, "discharg[ing] any individual" over the age of 40 "because of such individual's age." *See* 29 U.S.C. §§ 623(a)(1), 631. The Act provides for an award of double damages if the violation was "willful." *See id.* §§ 626(b), 216. Defendants contend that they are entitled to judgment as a matter of law because the evidence at trial was insufficient to support the jury's findings (1) that Kirsch was discharged, (2) that the discharge was because of his age, and (3) that their violation of the ADEA was willful. The first two challenges are without merit; the third is not properly before us.

■ The standard governing decisions of, and appeals from decisions of, motions for judgment as a matter of law under Fed. R.Civ.P. 50 ("JMOL") is well established. *See generally Galdieri–Ambrosini v. National Realty Development Corp.,* 136 F.3d 276, 289 (2d Cir.1998) (same standard governs in district court and on appeal). JMOL is inappropriate unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in his favor. *See, e.g., id.; Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1039 (2d Cir.1992); *Vasbinder v. Ambach,* 926 F.2d 1333, 1339 (2d Cir.1991). In assessing such a motion, the court is not allowed to weigh the credibility of witnesses or consider the weight of the evidence. *See, e.g., id.* at 1340. JMOL should not be granted unless

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1154 (2d Cir.1994) ("*Cruz v. Local Union No. 3* ") (internal quotation marks omitted); *see Gibeau v. Nellis,* 18 F.3d 107, 109 (2d Cir.1994).

### A. The Sufficiency of the Evidence as to Constructive Discharge

■ The "discharge" element of an ADEA claim may be either an actual termination of the plaintiff's employment by the employer or a "constructive" discharge. *See, e.g., Stetson v. NYNEX Service Co.,* 995 F.2d 355, 360 (2d Cir.1993); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983). A plaintiff may prove a constructive discharge by establishing that his "employer, rather than acting directly, deliberately ma[de his] working conditions so intolerable that [he was] forced into an involuntary resignation," *i.e.,* "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* at 325 (internal quotation marks omitted); *see Stetson v. NYNEX Service Co.,* 995 F.2d at 360–61.

■ In the present case, Kirsch was earning a salary of $60,000 in May 1991 and was entitled to a 2% override on sales to his customers in excess of $2 million. At the end of May, Fleet Street informed Kirsch that it was cutting his salary to less than 45% of what he had been earning, *i.e.,* from $60,000 to $26,000. Further, the company informed Kirsch that it was taking the Stern's account from him; since Stern's had accounted for 40–45% of Kirsch's sales, this essentially ended Kirsch's prospects for additional earnings through his override. The jury was free to infer that the reduction of compensation, from $60,000 plus override, to $26,000 without override, constituted a condition so difficult that a reasonable person in Kirsch's shoes would have felt compelled to resign.

In addition, there was sufficient evidence to permit the jury to infer that defendants' creation of that intolerable condition was deliberate. Although defendants point to testimony by Manny Haber that he and the company never intended to force Kirsch to leave, that argument goes to the weight of the evidence, not its sufficiency. The jury was entitled to reject Manny's self-serving testi-

mony, as it apparently did. The evidence to support a finding that defendants intended to force Kirsch to leave Fleet Street included not only the severity of the reduction in compensation itself and Kirsch's (uncontroverted) testimony that Alan Haber nodded in response to Kirsch's statement that the company was trying to force him to leave. It also included Kedrus's testimony as to Manny Haber's prediction, made weeks before Kirsch was informed of the intolerable reduction in his pay, that Kirsch would soon no longer be with the company.

The district court properly ruled that the evidence was sufficient to permit a rational juror to infer that Kirsch was the victim of a constructive discharge.

**B. *The Sufficiency of the Evidence of Age Discrimination***

 A plaintiff may prove that his discharge was "because of" his age, 29 U.S.C. § 623(a)(1), by showing that his "age played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 222 (2d Cir.1997); *see, e.g., Stratton v. Department for the Aging for the City of New York,* 132 F.3d 869, 878 (2d Cir.1997); *Ostrowski v. Atlantic Mutual Insurance Companies,* 968 F.2d 171, 180 (2d Cir.1992). He "may prove that the forbidden animus 'was a motivating factor' through the presentation of either 'direct' or 'circumstantial' evidence." *Id.* at 181–82 (quoting *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1186 (2d Cir.), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992)).

 Where the plaintiff has presented evidence sufficient to support an inference of impermissible discrimination and the employer has presented evidence sufficient to permit the inference of a permissible motive, the jury should be instructed that, if it finds that a discriminatory motivation was present, the burden of proof shifts to the defendant to show that the same action would have been taken for the permissible reason alone, and hence was not taken because of the unlawful animus, *see, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion);

*id.* at 259–60, 109 S.Ct. 1775 (White, J., concurring); *Ostrowski v. Atlantic Mutual Insurance Companies,* 968 F.2d at 182.

In *Ostrowski,* we noted that if the plaintiff seeks this *Price Waterhouse* burden-shifting instruction and his proof as to the employer's discriminatory animus is purely circumstantial,

> that circumstantial evidence must be tied directly to the alleged discriminatory animus. For example, purely statistical evidence would not warrant such a charge; nor would evidence merely of the plaintiff's qualification for and the availability of a given position; nor would "stray" remarks in the workplace by persons who are not involved in the pertinent decisionmaking process.... If, however, the plaintiff's nonstatistical evidence is directly tied to the forbidden animus, for example policy documents or statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit, that plaintiff is entitled to a burden-shifting instruction.

*Id.* at 182. In *Tyler v. Bethlehem Steel Corp.,* for example, we cited the proof that younger employees had received favorable treatment while the plaintiff had not, that the company had an approved category of employees called the " 'Young Tiger' classification," and that company appraisals specifically referred to " 'youth' in a positive manner" as among the evidence that warranted a burden-shifting charge. 958 F.2d at 1179, 1187. In sum, the plaintiff is entitled to the *Price Waterhouse* burden-shifting instruction where the evidence is "sufficient to allow a trier to find both forbidden and permissible motives." *Ostrowski v. Atlantic Mutual Insurance Companies,* 968 F.2d at 181.

 Defendants in the present case contend that Kirsch did not present sufficient evidence to permit an inference of discrimination because he presented only proof of "stray remarks." The record does not support this contention. First, the statements directly mentioning the youth or anticipated youth of the company's sales force were not made by random coworkers who were unin-

volved in the decisionmaking process. Rather, they were made by Steven Haber, who was a sales manager, officer, and director of the company. At least one of the statements was made at the behest of Manny Haber, the company's president, and there was ample evidence that Steven himself was one of the company's decisionmakers. For example, Manny Haber's testimony indicated that in 1990, when the company changed the form of Kirsch's compensation from commissions to the $60,000 salary, the decision was made by Manny, Alan, and Steven.

Moreover, the context in which Steven's statements were made suggested that they could not be considered "stray." His statement to Kirsch, "You better watch your ass. If you look around, you see all young people" (First Tr. 94), was made at a sales meeting and directly indicated that age was, and would likely continue to be, a factor in the company's determination of the makeup of its sales force. Further, that statement could reasonably be viewed as revealing an ingredient in the company's 1987 decision to discharge six road reps, all of whom were over the age of 50, shortly after Steven became sales manager. Plainly, the warning by Steven, a decisionmaker, to Kirsch, a man in his 60's, to "watch your ass .... you see all young people" may permissibly be construed as a company threat that Kirsch was vulnerable to being replaced by a younger person because of his age, rather than as a stray remark.

In this appeal, defendants also argue that that statement was made by Steven in 1987 and was too remote from the time of Kirsch's discharge to be relevant. The record does not support their assertion that Steven (who, though apparently in attendance at the trial, did not testify) made the statement in 1987 rather than closer to the time of Kirsch's discharge. The trial transcript indicates that when Kirsch described the incident, defendants and the trial judge viewed him as stating that Steven made the statement at the age of 19, which would place the incident in 1987. The testimony, however, suggests that the statement was made later than 1987, for Kirsch testified that in response to Steven's statement, Kirsch looked around, saw

that he was indeed the only person who was not young, and "remembered" the 1987 terminations of all of the other road reps who were over the age of 50 (First Tr. 94). And when the court, later in the trial, asked just when the "watch your ass .... you see all young people" statement by Steven was made, defense counsel responded, "The testimony is unclear. At some point in '87, '88, or '89." (First Tr. 809.) Further, another Fleet Street employee testified that, based on its occurrence in a facility not occupied by the company before 1989, he recalled Steven's reference to the youth of the sales force as having occurred in 1989 or later. The record thus does not require the conclusion that Steven's first statement was too remote from the time Kirsch was discharged to be relevant.

Moreover, Steven's additional statement "that the company was interested in new younger vision, new younger blood" (First Tr. 728) was made during the company's interviews of Kedrus in the spring of 1991, close to the time of Kirsch's discharge. Indeed, during the same interviews Manny revealed that he expected Kirsch to leave the company before Kedrus arrived. Further, in expressing this "younger blood" interest, Steven was the designated company spokesman, for when Kedrus inquired about Fleet Street's personnel and strategies, Manny referred the question to Steven. Given this background, Steven's response that the company wanted younger blood plainly was not a stray remark but represented the official company position.

■ In sum, the evidence supporting Kirsch's claim that his age was a factor in his discharge, taken in the light most favorable to Kirsch as the party against whom judgment as a matter of law was sought, included the 1987 firings of six road sales representatives all of whom were over the age of 50; the statement by company officer Steven Haber to Kirsch, in 1989 or later, to "watch your ass. If you look around, you see all young people"; the statement by Steven at the behest of Manny Haber, the company's president, just weeks prior to Kirsch's discharge, that the company was interested in having younger blood; and the statement by

Manny Haber in the course of the same interviews, indicating that Kirsch would soon no longer be with the company. A rational juror could permissibly infer from this evidence that age was a factor in Kirsch's discharge and that, but for his age, Kirsch would not have been discharged.

Defendants' efforts to suggest alternative, nondiscriminatory interpretations of Steven's references to the youth of the sales staff and to company goals of "younger vision" and "younger blood" are arguments more properly addressed to the jury than to this Court. The jury was free to reject defendants' suggested interpretations, and we may not overturn the jury's own reasonable interpretations or its credibility assessments. The district court properly ruled that the evidence was sufficient to permit a rational juror to infer that Kirsch was the victim of discrimination on the basis of his age.

C. *The Failure To Make a Timely Challenge as to Willfulness*

Finally, defendants contend that there was no evidence to support the jury's finding that their ADEA violation was willful, *i.e.,* that they "knew or showed reckless disregard for the matter of whether [their] conduct was prohibited" by the statute, *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (internal quotation marks omitted). This contention, however, was not properly preserved at trial.

It is well established that a party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict on a given issue unless it has timely moved in the district court for judgment as a matter of law on that issue. *See, e.g., Galdieri–Ambrosini v. National Realty Development Corp.,* 136 F.3d at 287. Such a motion must be made "before submission of the case to the jury." Fed.R.Civ.P. 50(a)(2). Since the purpose of requiring that the motion be made before submission of the case to the jury is "to give the claimant a fair opportunity to cure the defects in proof," *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir.1993) (internal quotation marks omitted); *see, e.g., Baskin v.*

*Hawley,* 807 F.2d 1120, 1134 (2d Cir.1986); Fed.R.Civ.P. 50 Advisory Committee Note (1991), the motion "must at least identify the specific element that the defendant contends is insufficiently supported." *Galdieri–Ambrosini v. National Realty & Development Corp.,* 136 F.3d at 286. For the same reason, although a motion for JMOL may be "renew[ed]" after the jury returns its verdict, *see* Fed.R.Civ.P. 50(a)(2), it may be renewed only on grounds that were specifically articulated before submission of the case to the jury, *see, e.g., Galdieri–Ambrosini v. National Realty Development Corp.,* 136 F.3d at 286; *McCardle v. Haddad,* 131 F.3d 43, 51 (2d Cir.1997).

As to any issue on which no proper Rule 50(b) motion was made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice. *See, e.g., Galdieri–Ambrosini v. National Realty Development Corp.,* 136 F.3d at 287; *Cruz v. Local Union No. 3,* 34 F.3d at 1155; *Lambert v. Genesee Hospital,* 10 F.3d 46, 53–54 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993).

In the present case, defendants' JMOL motions during the first trial challenged the evidence of discrimination and constructive discharge, and raised certain other issues not pertinent here; but they did not mention any lack of proof as to willfulness. Although their posttrial motion challenged the evidence as to willfulness, that challenge was not authorized by Rule 50(b) because no JMOL motion had been made on that issue before submission of the case to the jury. Accordingly, the willfulness issue has not been properly preserved.

Nor do we see that relieving defendants of their procedural default is needed to avoid injustice. The jury permissibly found that Fleet Street intentionally discharged Kirsch because of his age and that defendants sought to conceal their age-based motivation by proffering a pretextual rationale of corporate financial exigency. Defendants

have not suggested that they had any good faith basis for believing their conduct did not fall within the scope of the ADEA, and had defendants raised the issue at trial, it may be that Kirsch would have been able to present additional evidence to show that defendants knew, or recklessly disregarded the matter of whether, their conduct was prohibited by the ADEA. We decline to entertain defendants' present challenge to the sufficiency of the evidence of willfulness.

## III. KIRSCH'S CHALLENGES

Kirsch contends principally that the district court erred in setting aside so much of the first judgment as awarded him double damages of $530,000 and ordering a second trial on damages if he would not accept a remittitur to $232,748. As to the conduct of the second trial, Kirsch contends that the court erred in excluding evidence of the high compensation paid to other Fleet Street employees and in instructing the jury that the backpay period ended in June 1994, and that the judge's deportment denied him a fair trial. In addition, he contends that he was entitled to reinstatement or front pay on his ADEA claim and should have been awarded higher attorneys' fees; and he challenges the manner in which his labor law claim was submitted to the first jury.

A. *The Order for Remittitur or a New Trial*

 In challenging the district court's order for remittitur or a new trial and seeking reinstatement of the original judgment, Kirsch contends that the court could not properly set aside the first jury's award of damages without finding that the amount of that award was so high as to shock the judicial conscience. He argues that the court did not make such a finding and that there was, in any event, evidence sufficient to support the first jury's award. For the reasons that follow, we see no basis for reversal.

 The trial judge has " 'discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.' ... This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or condi-

tioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (quoting *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 540, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)). The district court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial,

> in at least two distinct kinds of cases: "(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, ... and (2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error."

*Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir.1993) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984)). Where there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless " 'the award is so high as to shock the judicial conscience and constitute a denial of justice,' " *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir.1988) (quoting *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978)). Where the court has identified a specific error, however, the court may set aside the resulting award even if its amount does not "shock the conscience." In either circumstance, the district court's evaluation that damages are excessive is reviewed for abuse of discretion. *See generally Gasperini v. Center for Humanities, Inc.*, 518 U.S. at 432–37; *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir.1961).

 In the present case, the district court granted defendants' motion for a remittitur or new trial on the ground that the jury erred by calculating Kirsch's entitlement to backpay on the basis of sums in excess of Kirsch's own compensation. In light of the June 1994 ending of the period for which Kirsch was entitled to backpay, *see* Part III.C.1. below, and the clear evidence as to

his compensation just prior to his discharge, we see no abuse of discretion in this decision. The evidence was that when Kirsch was discharged, his salary was $60,000, his fringe benefits did not exceed $5,000, and he had earned nothing on his 2% override. At that level of compensation, if Kirsch had not been discharged, he would have earned, from May 1991 until his June 1994 retirement, $200,417. The court correctly held that that $200,417 was required to be reduced by the estimated $63,274 that Kirsch earned in working for Tomen during that period and the $20,769 in severance payments he received from Fleet Street. The court concluded that those figures permitted a calculation of Kirsch's backpay loss at no more than $116,374, which when doubled would come to $232,748.

Kirsch contended that the verdict should be sustained on the basis that the jury had calculated his backpay award by starting with the annual salary and fringe benefits that the company had agreed to pay Kedrus ($80,000 plus $15,000). As discussed in Part III.B. below, we see no abuse of discretion in the district court's ruling that Kirsch's backpay should not be computed on the basis of the earnings of persons such as Kedrus or members of the Haber family, whose positions were not comparable to Kirsch's. That ruling was reflected in the court's instructions to the first jury that if it found that Kirsch was constructively discharged because of his age, he was entitled to be "ma[d]e ... whole" through the "recover[y of] lost wages an[d] benefits," and that the jury was to determine his entitlement to backpay with reference to "the amount that would have been earned." (First Tr. 1207.) In order to make Kirsch "whole" by reference to "the amount that would have been earned," the jury was required to refer to Kirsch's own compensation, for he was injured only to the extent that he lost what he, not what someone else, would have earned. Since the jury awarded far more than was reasonably inferable from the evidence of what Kirsch himself would have earned, it plainly did not follow the court's instructions.

Accordingly, we see no basis for reversing the district court's determination that insofar as the jury found that Kirsch had suffered more than $116,374 in lost back wages, the jury erred by basing that finding on something other than evidence of Kirsch's own level of compensation. The order for remittitur or a new trial was not an abuse of discretion.

### B. *Evidence of the Compensation of Kedrus, Lustig, and the Habers*

 Kirsch contends that the district court erred at the second trial in refusing to allow him to introduce evidence as to the compensation that Fleet Street paid to Kedrus, Lustig, and Alan and Steven Haber. He contends that that ruling impeded proof of his damages. We disagree.

 A backpay award for discriminatory discharge is intended "to restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place." *McMahon v. Libbey–Owens–Ford Co.*, 870 F.2d 1073, 1079 (6th Cir. 1989) (internal quotation marks omitted); *see Loeffler v. Frank*, 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (backpay award under Title VII "is a manifestation of Congress' intent to make 'persons whole for injuries suffered through past discrimination'" (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975))); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir. 1984) (same under ADEA). Such an award should be based on what the employee himself would have earned had he not been discharged. Evidence of the salaries paid to other individuals may be relevant to that calculation, but only insofar as the plaintiff lays a sufficient foundation to permit the reasonable inference that his salary would have matched or been pegged to the salaries of others. The trial court has considerable discretion to determine whether there is such a sufficient foundation, *see generally George v. Celotex Corp.*, 914 F.2d 26, 28 (2d Cir.1990) ("district court's determination of relevance will not be disturbed unless it evidences an abuse of discretion"); and even an erroneous ruling will not lead to reversal unless affirmance would be "inconsistent with substantial justice," Fed.R.Civ.P. 61.

The record at the first trial of the present case easily justified the district court's conclusion that Kirsch's position was not sufficiently similar to the positions of Kedrus, Lustig, and the Habers. Kirsch had been a road sales representative and in 1985–1990 was also a sales administrator. In the latter capacity he was merely a liaison with the other road reps, responsible for knowing the company's inventory, promotional merchandise, and product lines; he had no supervisory control over the road reps: no authority to set compensation, to establish work schedules, or to hire and fire. Indeed, he was not even privy to the company's decision to fire the other road reps in 1987: he was not informed of that decision in advance, was not invited to attend its implementation, and was not informed of the company's reasons thereafter.

Kedrus, in contrast, had previously occupied managerial posts at two major companies in the industry, had supervised staffs of 10–15 salespersons, and was hired to be Fleet Street's national sales director. Kedrus was placed in charge of sales and discipline of the sales staff, was given supervisory authority over Kirsch, and was to locate new growth opportunities for the company and devise marketing strategies. Although Lustig was more similar to Kirsch in that he was a sales representative who reported to Kedrus, Kirsch did not present sufficient evidence of the similarity of their performance or responsibilities in terms of, for example, number or size of accounts, the volume of sales they generated, or their profitability. And the Habers were surely not comparable to Kirsch, for they were not only supervisors of Kirsch's supervisor, they were officers and owners of the company.

In sum, given Kirsch's failure to present evidence sufficient to permit a reasonable inference that his compensation would have matched or been linked to theirs, we see no abuse of discretion in the district court's ruling that the compensation paid to Kedrus (totaling $95,000), Lustig ($152,992), Steven Haber ($162,600), and Alan Haber ($200,000), was not relevant to the calculation of the extent to which the constructive discharge

injured Kirsch, whose pre-discharge compensation totaled $65,000.

Kirsch's reliance on cases such as *Stratton v. Department for the Aging for the City of New York*, 132 F.3d 869, and *Burger v. New York Institute of Technology*, 94 F.3d 830 (2d Cir.1996), for the proposition that evidence on damages should be admitted with respect to employees whose job functions were not necessarily identical to those of the plaintiff, is misplaced. *Stratton* did not permit damages to be shown by evidence of the salary paid to a person in a different position. Rather, we upheld the admission of evidence as to the salary paid to the person who was hired in preference to the plaintiff for one particular position. There was no suggestion that Stratton's backpay entitlement could be measured by the salary paid to her supervisor or her supervisor's supervisors. And *Burger* dealt not with the calculation of damages at all but rather with the sufficiency of the evidence to show that a discharge had occurred under circumstances giving rise to an inference of discrimination. It contains no suggestion that a plaintiff is entitled to have his backpay for an unlawful discharge based on the compensation paid to other employees whose job circumstances are not similar.

## C. *ADEA Remedies*

Kirsch also contends that the district court improperly truncated the period for which he was entitled to backpay and erred in denying him the additional remedies of front pay and reinstatement.

### 1. *The June 1994 Cutoff of the Backpay Period*

Kirsch contends that the district court erred in ruling that the period for which he was entitled to backpay ended in June 1994. We reject this contention in light of the evidentiary and procedural record in this case.

A plaintiff who has proven a discharge in violation of the ADEA is, as a general matter, entitled to backpay from the date of discharge until the date of judgment. *See, e.g., Dunlap–McCuller v. Riese Organi-*

*zation*, 980 F.2d 153, 159 (2d Cir.1992), *cert. denied*, 510 U.S. 905, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993); *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 144 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir.1986) ("court should compute the backpay award from the date of the discriminatory act until the date of final judgment"). The backpay period ends prior to judgment, however, if the plaintiff has theretofore retired, for "a discriminatee is not entitled to back pay to the extent that he fails to remain in the labor market," *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n. 3 (2d Cir. 1965) (discussing backpay entitlement under National Labor Relations Act), *cert. denied*, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966). A plaintiff "may not simply abandon his job search and continue to recover back pay." *Hansard v. Pepsi–Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir.) (ADEA plaintiff not entitled to backpay for period after he stopped looking for work), *cert. denied*, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989); *see, e.g., Thorne v. City of El Segundo*, 802 F.2d at 1133–38 (no backpay for four-year period in which Title VII plaintiff chose not to work).

In the present case, the jury was not asked to make a finding as to when Kirsch retired. Rather, it was informed that he had retired in June 1994, in the question "Did plaintiff make a diligent search for other work in the period after he *retired* to Florida in June 1994" (Verdict Form Question 7 (emphasis added)). The formulation of this question was doubtless based on Kirsch's testimony that when he and his wife moved to Florida in June 1994, "I retired" (First Tr. 164). And although Kirsch also testified that he had not wanted to retire before age 70 (*i.e.*, some 3½ years after the move to Florida), we see no indication in the record that he objected to the verdict form's description of him as having retired. Consistent with Kirsch's having retired, and consistent with his testimony that the extent of his efforts to seek work after moving to Florida was to inform some of his New York acquaintances that he was available to show their products in Florida, the jury found that after moving to Florida, Kirsch did not make a diligent search for other work. Further, having been instructed that Kirsch could be awarded front pay only if future damages were caused by the constructive discharge, the jury found—again consistent with Kirsch's having retired in June 1994—that Kirsch was not entitled to any front pay.

If Kirsch wanted a finding by the jury as to when he retired, it was incumbent on him at least to request, prior to the start of the jury's deliberations, *see* Fed.R.Civ.P. 49(a), that such a question be included in the verdict form and that the answer to that question not be treated as undisputed elsewhere in the verdict form. Since no such question was submitted or requested, if the question of when Kirsch retired was in dispute when the case was submitted to the jury, the resolution of that issue was left to the trial judge. *See, e.g., id.; Cullen v. Margiotta*, 811 F.2d 698, 730–31 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), *overruled on other grounds, Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Getty Petroleum Corp. v. Island Transportation Corp.*, 878 F.2d 650, 656 (2d Cir.), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

To the extent that the question was in dispute, the trial court fulfilled its responsibility to make a finding on that issue, ruling that Kirsch had retired in June 1994. In light of Kirsch's own testimony, that ruling cannot be overturned. The court's conclusion that the period for which Kirsch was entitled to backpay ended in June 1994 was therefore correct.

*2. Reinstatement*

Kirsch also contends that he was entitled to be reinstated to his position at Fleet Street. We disagree.

Although the ADEA allows the court, in its discretion, to order reinstatement, *see* 29 U.S.C. § 626(b), which can serve to "reestablish the prior employment relationship ... and at the same time assure the plaintiff of employment free of discrimination based on age," *Whittlesey v. Union Carbide*

*Corp.*, 742 F.2d at 728, the court may find that relief inappropriate if "the employer-employee relationship may have been irreparably damaged," *Padilla v. Metro–North Commuter Railroad*, 92 F.3d 117, 125 (2d Cir.1996) (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). Further, reinstatement is a forward-looking remedy that should not be awarded where the plaintiff's eligibility for relief under the ADEA has terminated before judgment. *See, e.g., Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980) (reinstatement unwarranted where jury found that the plaintiff had been hired only for a one-year term, and that term had expired), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

In this case, the district court found, in light of, *inter alia,* the hostility Kirsch had described at trial and the fact that Kirsch had been retired since June 1994, that reinstatement was "not a suitable remedy." 1996 Posttrial Order at 11. Given the record, we see no abuse of discretion in the court's refusal to order reinstatement.

### 3. *Front Pay*

██ Where an ADEA plaintiff is entitled to forward-looking relief but reinstatement is inappropriate, the district court has discretion to award front pay. *See, e.g., Padilla v. Metro–North Commuter Railroad*, 92 F.3d at 125; *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1256–57 (2d Cir.1987); *Whittlesey v. Union Carbide Corp.*, 742 F.2d at 728. Kirsch contends that since the court did not award reinstatement, it should have awarded him front pay. This contention, even if properly preserved, is meritless.

██ As a procedural matter, it does not appear that the issue of front pay is properly before us, since we see no indication in the record that Kirsch moved the district judge to grant him that relief. His motion following the first trial requested reinstatement but did not request front pay. Indeed, in his affidavit supporting the motion for reinstatement, Kirsch argued that the court should grant him reinstatement "[s]ince the jury concluded that I was not entitled to front pay." (Affidavit of Daniel Kirsch dated Octo-

ber 18, 1995, ¶ 17.) Kirsch's apparent posttrial belief that the front pay issue had been resolved by the jury may or may not have been correct. The question of whether front pay should be awarded under the ADEA is one as to which the parties had no right to a jury trial, *see, e.g., Dominic v. Consolidated Edison Co.*, 822 F.2d at 1257 ("issues concerning equitable relief are not to be tried by a jury"), although they could of course have consented to such a trial, *see* Fed.R.Civ.P. 39(c) ("In all actions not triable of right by a jury ... the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."). On this appeal, Kirsch invokes *Dominic* and argues that the jury's verdict was merely advisory and not binding on the court; his present view obviously contradicts the premise on which he urged the district court to grant his posttrial motion for reinstatement. On the other hand, his present view may be correct, for the record clearly indicates that at trial, defendants did not consent to have the issue of front pay decided by the jury. (*See* First Tr. 1120 (defense counsel stating "defendants' objection and position that front pay is not an issue to be submitted to the jury. I understand from the court it will do so on an advisory issue [*sic*] only with respect to front pay....")). Defendants' position on appeal, however, with a favorable jury answer in hand, appears to be that the jury's verdict was not merely advisory after all (*see* Defendants' brief on appeal at 42 ("the jury already determined no front pay would be awarded")).

██ We need not determine, however, whether the parties are entitled to their opportunistic reversals of position. Whatever the validity of Kirsch's assumption following the first trial that the jury's denial of front pay was definitive, we see no indication that Kirsch moved the district court to award him front pay, nor any indication that the court understood him to move for front pay, for the court's denial of his motion for reinstatement did not mention front pay. Thus, even assuming that the jury's verdict on front pay was merely advisory and that the question remained open, we conclude that in light of

Kirsch's failure to pursue that remedy by motion to the district court, the question of his entitlement to front pay has not been preserved for review.

Finally, as a substantive matter, if such a motion was thereafter properly presented to the district court, thereby preserving it for appellate review, we conclude that it was well within the district court's discretion to deny it.

D. *Submission of the Labor Law "Employee" Question to the Jury*

■ Under Article 6 of the New York Labor Law, an employer is required to pay a "commission salesman" in accordance with the agreed terms of employment. *See* N.Y. Labor Law § 191(1)(c). The statute defines a "commission salesman" as an "employee" whose earnings are based in whole or in part on commissions, *id.* § 190(6), and a person who is not an employee but an independent contractor is not within the scope of this section, *see, e.g., Rivers v. Butterhill Realty,* 145 A.D.2d 709, 710–11, 534 N.Y.S.2d 834, 836 (3d Dep't 1988); *Guepet v. International Tao Systems, Inc.,* 110 Misc.2d 940, 443 N.Y.S.2d 321 (1981).

■ Kirsch contends that irrespective of the outcome of the challenges relating to his ADEA claim, he is entitled to a new trial on his labor law claim because the question of whether he was an employee was improperly submitted to the jury. He argues (1) that the district court unduly "narrowly defined the factors that the jury was to consider in considering whether plaintiff was an employee or an[ ] independent contractor" (Kirsch brief on appeal at 43), and (2) that "[t]he question of whether an individual is an 'employee' under the New York Labor Law is a question of statutory interpretation that must be a legal question that only a Court of law can determine after the jury makes findings regarding the relevant operative facts" (*id.*). We find no basis for reversal in either contention because the instructions given were not erroneous and because the manner of submitting the question to the jury arguably was not error, and if error, was surely harmless.

Preliminarily, we note that contrary to Kirsch's present contention that the court's instructions to the jury were unduly narrow, his attorney at the charging conference sought instructions that were narrower than those eventually given:

MR. WISEHART (Kirsch's attorney): . . . .

I think ... the jury should only be requested to determine the factual issues of direction or control, and that that is what is required based upon the totality of the circumstances in this particular case, not upon some general preconception. . . .

. . . .

THE COURT: ... I will add: Therefore it is up to you to judge, based upon the totality of the circumstances in this case, whether Mr. Kirsch, when he was performing duties as a salesman, was an independent contractor or an employee under the totality of all the circumstances.

. . . .

MR. WISEHART: I think the totality of circumstances goes to the issue of control.

. . . .

MR. WISEHART: I think it should deal only with the issue of control. The jury should find based on that issue.

THE COURT: Overruled.

(First Tr. 1123–27.) The instruction eventually given by the court, quoted in Part I.B. above, was broader than that sought by Kirsch, and we are not persuaded that the court's instructions in any way misled or inadequately informed the jury of the law.

■ As to the matter of whether Kirsch was an employee is an issue of law or of fact, the question is perhaps closer. In reviewing rulings after the bench trial of a claim under a federal statute in *Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir.1988), we discussed factors to be considered in determining whether a person was an employee or an independent contractor in light of the totality of the circumstances, and we noted that the "existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors— is a question of law." *Id.* at 1059. On the other hand, in the context of a claim for

commissions under the very statute at issue here, a state court has stated that the question of "whether [a] plaintiff was an employee or an independent contractor" within the meaning of the New York Labor Law is "a question of fact for trial." *Rivers v. Butterhill Realty*, 145 A.D.2d at 711, 534 N.Y.S.2d at 836. *See also In Matter of Rivera*, 69 N.Y.2d 679, 512 N.Y.S.2d 14, 504 N.E.2d 381 (1986) (upholding, as a factual determination entitled to a substantial-evidence standard of review, an administrative board's finding as to the existence of an employment relationship).

Whether the bottom-line question of whether a plaintiff was an employee or an independent contractor is characterized as a question of law or a question of fact, however, we cannot see that the submission of that question to the jury warrants a new trial. *See generally* 28 U.S.C. § 2111 (reversal not warranted for "errors or defects which do not affect the substantial rights of the parties"). Such questions are regularly presented to juries that are instructed to return general verdicts, informed by the court's instructions on the law and given the direction that if they find that the plaintiffs in question were employees (and find all of the other elements of the plaintiffs' claims proven), they should simply state that they find in favor of the plaintiffs. Given the established principle that a trial judge has discretion to call for a general verdict rather than a special verdict, *see, e.g., Skidmore v. Baltimore & O.R. Co.*, 167 F.2d 54, 66–67 (2d Cir.) (Fed.R.Civ.P. 49(a)'s provision for special verdict is permissive, not mandatory), *cert. denied*, 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371 (1948); 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2505 (1995), we cannot conclude that the refusal of the trial court in this case to give the jury only specific fact questions and to reserve to the court the determination of whether Kirsch was an employee or an independent contractor, affected Kirsch's substantial rights.

We note parenthetically that the trial record was ample to permit any decisionmaker to conclude, in light of the totality of the circumstances, that Kirsch was not an employee but an independent contractor. The record included evidence that prior to being placed on salary in 1990, Kirsch was not required to spend time in the company's offices; was free to set his own schedule and take vacations when he wished; did not have the company withhold income or Social Security taxes; did not receive employee benefits such as health insurance; was not reimbursed for his expenses; was allowed to sell merchandise on behalf of other companies; and described himself as "independently employed." We see no basis for a new trial.

Finally, Kirsch has also asked, if we deny him a new trial on the labor law claim, that we allow him to amend his complaint to assert a claim for breach of contract. We reject this request. When a plaintiff has not moved for leave to amend in the district court, we are ordinarily disinclined to exercise our discretion to grant his belated request on appeal. *See, e.g., Dwares v. City of New York*, 985 F.2d 94, 101 (2d Cir.1993). We see no indication that Kirsch asked the district court for leave to amend to assert a contract claim, even after the first jury had rejected his labor law claim and after it became clear that there would, for other reasons, be a partial second trial. We decline to allow a tardy amendment that would necessitate a third trial.

*E. Attorneys' Fees*

Following the jury verdict at the first trial, Kirsch submitted a motion for an award of $329,431.30 in attorneys' fees. The court deferred its ruling until after the second trial. On November 7, 1996, at the close of the second trial, the court indicated its belief that there would be an expedited appeal, and it stated that in order to permit all issues to be reviewed together, it wanted to resolve quickly any questions as to attorneys' fees. The court therefore asked:

THE COURT: .... Do any of you wish to add anything, as far as attorneys fees?

MR. WISEHART: We have additional time.

THE COURT: I want the case to proceed.

MR. WISEHART: We have nothing to add for the period of time covered.

(Transcript of Second Trial ("Second Tr.") 317.) Kirsch did not thereafter supplement his motion for attorneys' fees.

In an Opinion and Order dated December 4, 1996 ("December 1996 Fee Decision"), the court awarded Kirsch attorneys' fees in the amount of $89,475, finding that Kirsch's request for $329,431.30 was unreasonable for several reasons. First, it found that though Kirsch claimed a $325/hour rate for his lead counsel, Wisehart, Kirsch had not provided adequate justification for that rate. For example, Kirsch had not submitted evidence either of the rates he himself had been charged for this suit or of Wisehart's customary rates. Accordingly, noting that there was no defense objection to the requested rate of $175 per hour for senior associate time, and noting that in a comparable case pending from 1979 to 1987, Wisehart as lead counsel had received hourly rates of $175–$200, the court concluded that a reasonable rate of compensation for Wisehart's time in the present case would be $250 per hour.

Second, the court found that the number of hours for which fees were sought was excessive. It excluded hours devoted to the unsuccessful pursuit of Kirsch's labor law claim, rejecting the argument that that claim was inextricably intertwined with his ADEA claim, and finding instead that the two claims were unrelated in fact or law. Because the records submitted in support of the fee application did not indicate clearly the amount of time spent on each claim, the court considered "plaintiff's pattern of discovery, legal submissions to the Court[,] and [the] allotment of time at trial" and reduced the number of hours by 50%. *Id.* at 11.

Third, the court ruled that a further reduction of 20% was warranted "in light of vague or otherwise inconsistent [time sheet] entries, as well as other unrecoverable hours." *Id.* at 12. It pointed out that

[a] number of the attorneys' time entries merely note, for instance, "letter to court," "staff conference," or "work on motion." Such entries are too vague to sufficiently document the hours claimed.... Plaintiff's attorneys' time submissions are also marked by inconsistencies. For instance, certain counsel documented conferences

with other attorneys, even though such conferences do not appear on the other attorneys' time sheets. Furthermore, some of the time entries are likely redundant, because a junior associate was brought into the middle of the litigation, [and] no doubt had to expend significant time familiarizing herself with the history and status of the case.... Therefore, after careful consideration of plaintiff's submissions, the Court determines an additional twenty (20) percent reduction in the attorneys' time expenditures would sufficiently account for inadequately documented, inconsistent or redundant expenditures of time.

*Id.* at 12–13.

Finally, the court awarded no fee for work done in connection with the second trial on damages, finding that Kirsch had "declined to make additional fee submissions relating to the latest damages trial." December 1996 Fee Decision at 7. The court added that "even if such a request had been made, ... an additional amount would not have been warranted as part of a reasonable fee award given the circumstances of this case." *Id.*

■ Kirsch challenges all of these reductions. We review awards of attorneys' fees for abuse of discretion, *see, e.g., Saulpaugh v. Monroe Community Hospital,* 4 F.3d at 145; *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86 (2d Cir.1983), and we find no abuse of discretion here.

■ The court's normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called "lodestar" figure, which is arrived at by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see Cruz v. Local Union No. 3,* 34 F.3d at 1159. The lodestar should be based on "prevailing market rates," *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), for comparable attorneys of comparable skill and standing in the pertinent legal community.

Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done. *See, e.g., Hensley v. Eckerhart*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933; *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986); *New York Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983). Hours that are "excessive, redundant, or otherwise unnecessary," are to be excluded, *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. 1933; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application," *New York Association for Retarded Children v. Carey*, 711 F.2d at 1146. A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were "based on different facts and different legal theories," *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. 1933.

These principles were properly applied by the district court in this case. In light of Kirsch's submissions, we see no abuse of discretion in the adjustment of the rate to be paid for Wisehart's time or as to the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records.

Kirsch's contention that he should have received fees for the pursuit of his unsuccessful labor law claim is likewise meritless. Kirsch succeeded on a claim that arose under the ADEA, which required proof of an age-motivated constructive discharge in May 1991 by means of an oppressive salary adjustment and account reassignment. In contrast, his failed claim for commissions was asserted under the New York Labor Law, covered the years 1984–1989, was based on an alleged 1970 oral contract regarding commissions and on other events predating 1990, and had nothing to do with his age. The key issue for the labor law claim was whether Kirsch was an employee or an independent contractor in that pre–1990 period, which was not an issue with respect to his ADEA claim.

The district court properly ruled that the two claims were unrelated in fact or legal theory and that fees should not be awarded for pursuit of the failed labor law claim.

Finally, we see no abuse of discretion in the court's refusal to award Kirsch fees with respect to the second damages trial. In so doing, the court, in part, interpreted Wisehart's statements at the end of that trial as indicating that Kirsch did not intend to request fees for that trial. *See* December 1996 Fee Decision at 7 ("plaintiff's counsel stat[ed] he had nothing to add as far as attorneys' fees for the period of time covered"). We think the statement referred to was ambiguous, both on its face and in light of counsel's preceding statement that "[w]e have additional time" (Second Tr. 317); and we would not uphold the denial of fees for the second trial on the basis of the "nothing to add" statement alone. In fact, however, no seasonable supplemental fee request was submitted. There can be no question that in the November 7 discussion the court alerted the parties that it intended to decide the fee question quickly and that if the parties wished to make additional submissions they should do so promptly; and there is no question that, in the several weeks between that colloquy and the court's issuance of the December 4 fee decision, Kirsch, though submitting a motion for different relief, did not submit any request for fees relating to the second trial. In light of Kirsch's failure to make such a submission, the district court was justified in not awarding fees with respect to the second trial.

Nor do we see any abuse of discretion in the court's conclusion that even a timely request for fees with respect to the second trial would properly have been denied. Kirsch had been given the option of accepting a remittitur that would have given him a backpay award of $232,748; his refusal to accept the remittitur, thereby necessitating the second trial, won him a backpay award of $190,000. The court had discretion to conclude that Kirsch should not receive a fee award for time spent to obtain a judgment for some $40,000 less than the judg-

ment he could have received without any additional work.

### F. *Kirsch's Criticism of the Trial Judge*

█ Finally, we note that Kirsch contends that he was denied a fair trial at the second trial, arguing that "inappropriate behavior" by the trial judge "convey[ed] the impression that the Court held an unfavorable opinion of both plaintiff's case and his counsel." (Kirsch brief on appeal at 23; *see also id.* ("demeanor of the judge transgressed his appropriate role, in the presence of the jury").) Our review of the record persuades us that this contention is unjustified.

First, a number of the trial judge's statements of which Kirsch is critical were made during sidebar conferences, out of the hearing of the jury. Although Kirsch states that the court's statements in these conferences reflected "hostility ... evident to everyone in the courtroom" (*id.* at 24), we see nothing in the record to indicate that the sidebars were conducted in other than the normal manner, *i.e.*, quietly and discreetly so that the jury could not hear. Thus, although the contents of some of the sidebar colloquys plainly do indicate a degree of frustration (understandably, in light of the record) at the refusal of plaintiff's counsel, Wisehart, to comply with the court's prior rulings, the record does not support Kirsch's contention that the court conveyed an impression of partiality.

█ Moreover, although Kirsch argues that judicial hostility was evident because during Wisehart's summation "the Court interrupted an unprecedented sixteen times" (*id.* at 24), the record shows that virtually all of the interruptions were in fact objections by defense counsel. Further, all of the objections were prompted by inappropriate arguments by Wisehart. For example, in defending the compensation paid to Kirsch's expert witness, which was in evidence, Wisehart began to compare that figure to "what, based upon his stature, my adversary has received for the last week." (Second Tr. 282.) The court appropriately admonished Wisehart not to testify and to confine his arguments to matters in evidence. Further, Wisehart suggested, without any evidentiary

basis in the record, that if the jury felt that Kirsch would have received salary raises in the absence of the discrimination, it "could decide that [his compensation] could be increased by 50 percent." (*Id.* 279.) The court appropriately instructed the jury not to engage in speculation.

To the extent that the court itself interrupted statements by Wisehart even before objections were made by the defense, it did so in response to plainly improper arguments. For example, after being admonished not to urge the jury to speculate on increases of 50%, Wisehart stated to the jury, "some of you know the sales field" (*id.* 280), which prompted the court to remind the jurors that they were not to base their verdict on information other than the evidence admitted at trial. Similarly, when, in urging the jury to augment Kirsch's base salary, Wisehart began to state, "Also, there is a legal basis. This Court, in the case that was decided—" (*id.* 284), the court properly interrupted to admonish Wisehart not to "argue the law to the jury" (*id.*). In sum, Kirsch's attorney's improper arguments to the jury invited objections and admonitions. We see no unfairness in the trial.

## CONCLUSION

We have considered all of the parties' contentions that are properly before us on this appeal, and have found in them no basis for reversal. The judgment of the district court is affirmed.

Each side shall bear its own costs on these appeals.