Steven WEISSMAN, Plaintiff–Appellee–Cross–Appellant,

v.

DAWN JOY FASHIONS, INC., Defendant–Appellant–Cross–Appellee.

Docket Nos. 98–7813(L), 99–7407(XAP)

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1999

Decided June 5, 2000

Ira A. Turret, Field, Lomenzo & Turret, New York, NY, for Defendant–Appellant–Cross–Appellee.

John A. Beranbaum, Beranbaum, Menken, Ben–Asher & Fishel LLP, New York, NY, for Plaintiff–Appellee–Cross–Appellant.

Before: JACOBS and STRAUB, Circuit Judges, and PAULEY, District Judge.*

* The Honorable William H. Pauley III, of the United States District Court for the Southern District of New York, sitting by designation.

PER CURIAM:

Dawn Joy Fashions, Inc., appeals from a judgment entered following a jury trial in the United States District Court for the Southern District of New York (Louis L. Stanton, Judge) awarding plaintiff Steven Weissman compensatory and economic damages pursuant to his claims of discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8–107 ("Administrative Code"), because he was fired after suffering a heart attack. The jury also awarded Weissman punitive damages of $150,000, but the District Court granted the defendant's post-trial motion for judgment as a matter of law and vacated the award. Weissman cross-appeals from this ruling.

At oral argument, we asked the parties to address whether Dawn Joy's post-trial motions were filed within the ten-day time limit set forth in Rule 6(b) of the Federal Rules of Civil Procedure, and if not, whether we had jurisdiction to address Dawn Joy's arguments as to the sufficiency of the evidence. We conclude that the post-trial motions were not timely, and, therefore, that the District Court lacked jurisdiction to alter the judgment entered as a result of the jury's verdict in Weissman's favor. However, while the lack of timeliness was a jurisdictional bar to the District Court's modification of the judgment, we further conclude that timeliness of post trial motions is a mandatory, but not a jurisdictional, requirement to our consideration of sufficiency of the evidence claims on appeal. Since Weissman failed to raise the timeliness issue in the District Court or on appeal, he has waived any objection and we may consider Dawn Joy's challenges to the evidence supporting the jury's verdict. Ultimately, however, we reach a similar result to that of the District Court—we vacate the award of punitive damages, but affirm in all other respects.

## BACKGROUND

■ On appeal from the denial of a Rule 50 motion, we review the evidence in the light most favorable to Weissman, the opposing party. See *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir.1998). Weissman was hired in June 1992 by Dawn Joy, a manufacturer of women's garments, as a salesman in its Sherry Martin Division at a salary of $800 per week. In December 1992, Weissman received a discretionary bonus of $800, as well as $200 in cash, from his direct supervisor, Margo Schoeman, who told him, "Nobody works as hard as you do to make things happen here. I wish I could give you more but this is what we can do." Joint Appendix ("Jt.App.") 115. Following his three-month review, Weissman began making requests for a raise, and, toward the end of February 1993, Schoeman notified Weissman that he would receive a raise of $100 per week, for a total weekly salary of $900, effective in March 1993. According to Weissman, Schoeman told him that he was doing a good job and that he "should keep up the good work." Jt.App. 117.

On March 17, 1993, Weissman, who was then thirty-one years old, went to work feeling ill and experiencing severe chest pains. Weissman informed Schoeman and Alan Kleinberg, a sales manager at Dawn Joy, that he was going to the doctor. His physicians discovered that he had suffered a mild heart attack as a result of a blocked artery. While he was waiting to be admitted to the hospital, Weissman called Schoeman and explained that he had suffered a heart attack and that his doctors said he would be able to return to Dawn Joy in four or five weeks.

On March 23, 1993, Dawn Joy placed Weissman on disability leave so that he could receive disability benefits. Several days later, on March 29, Weissman received a call from Schoeman, who told him that the company was busy, and that "she

had to hire somebody." Jt.App. 132. Weissman testified that Schoeman then gave the phone to Kleinberg, who was Schoeman's supervisor. Kleinberg reiterated that the company was busy and that Weissman should consider himself fired as of that day. Weissman protested, and told Kleinberg that Weissman's physician had promised to clear Weissman for work in four or five weeks. According to Weissman, Kleinberg responded that "it might be *four or five weeks, but it may be four to five months or it may be never and we can't wait.*" Jt.App. 134. Kleinberg also told Weissman that *when he was able to return to work, "we"—i.e., Dawn Joy—* would try to help him find a position within either the *Sherry Martin Division or else-* where in Dawn Joy. Id.

Weissman also introduced evidence at trial that the disability benefits form, which he completed in part, contained a section for the employer to complete. Dawn Joy's office manager, Ruth Heinken, noted on the form that Weissman's employment had been terminated on March 29, 1993. Heinken also wrote that Weissman was "not able to hold job, had to replace." Jt.App. 131, 83, 85. Weissman testified at trial that Dawn Joy terminated his health insurance shortly after he was fired.

On April 16, 1993, Weissman sent a letter to Alan Kleinberg at Dawn Joy which stated, "As anticipated, I am ready to return to work. Please let me know when I should come in." Jt.App. 260. After he received the letter, Kleinberg called Weissman and left a message. However, on April 22, 1993, Weissman filed a complaint with the New York City Commission on Human Rights ("NYCCHR"), and, when Weissman returned Kleinberg's call, Kleinberg informed him that Dawn Joy's lawyer had recommended that Kleinberg should not talk to Weissman. In addition, Dawn Joy halted any attempt to find Weissman another position in the company, although additional positions opened up.

Weissman filed his complaint on March 17, 1995, and, in a subsequent amended complaint filed in May 1996, he alleged that Dawn Joy violated the ADA, the state Human Rights Law, and the Administrative Code by failing to accommodate his disability, by discharging him because of his disability, and by retaliating against him after he filed his complaint with the New York City Commission on Human Rights. After discovery, Dawn Joy moved for summary judgment, which the District Court, by opinion and order of August 11, 1997, denied as to all of Weissman's claims with the exception of his claim that he was fired due to depression. See *Weissman v. Dawn Joy Fashions, Inc.*, No. 95 Civ. 1841, 1997 WL 458797 (S.D.N.Y. Aug. 11, 1997). The District Court found that there were issues of fact as to: (1) whether Weissman's alleged disability, his heart attack, was "substantially limiting" under the ADA; (2) whether the company regarded Weissman as disabled; (3) whether Dawn Joy retaliated against Weissman by refusing to try to rehire him after he filed his complaint; and (4) whether there was an opening for Weissman. *Id.* at *2–*5.

The case was tried before a jury, and on May 18, 1998, the jury found for Weissman on his discrimination and retaliation claims, and awarded him economic damages of $75,000, compensatory damages of $95,000, and punitive damages of $150,000. After the verdict, Dawn Joy's counsel requested an extension of time to file a renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and a motion for a new trial pursuant to Rule 59, and the District Court orally granted the extension for thirty days. Judgment was entered on May 22, 1998, and the case was closed. By stipulation and order entered on June 16, 1998, the District Court again extended Dawn Joy's time to file its Rule ⁵⁰⁄₅₉ motion, until June 24, 1998.

On March 16, 1999, the District Court issued its ruling on Dawn Joy's Rule 50 and 59 motions. First, the court conclud-

ed that "[t]he jury's findings of discrimination and retaliation were supported by sufficient evidence and will not be disturbed." *Weissman v. Dawn Joy Fashions, Inc.*, No. 95 Civ. 1841, 1999 WL 144488, at *1 (S.D.N.Y. Mar. 17, 1999). The court also refused to disturb the award of $75,000 in economic damages for six months of unemployment and for accepting a lower salaried position. With respect to the $95,000 in compensatory damages, the court concluded that "[t]he mental anguish presented in this case is far less serious than in the great majority of cases" in which damages of more than $65,000 were awarded, and ordered that the award be reduced to $65,000. Finally, the District Court granted the Rule 50 motion with respect to the punitive damages award. The court noted that Dawn Joy stopped looking for a position for Weissman only after he filed his discrimination claim, and that this allegedly retaliatory action did not rise to the level of malice or recklessness and did not evince bad faith because Dawn Joy was relying on the advice of counsel. With respect to the discrimination claim, the court concluded that there were not "continuous or multiple acts ... and a good deal of evidence showed that plaintiff was a bad-tempered and inadequate worker who was slated to be fired anyway, and that his supervisors attempted to let him down gently by attributing his firing to his heart attack rather than his performance." The District Court also granted the plaintiff's motion for attorney's fees and costs, and filed a new judgment.[1]

Dawn Joy, which had filed a notice of appeal from the first judgment, but had withdrawn the appeal from active consideration by this Court during the pendency of the post-trial motions, requested that the appeal be reinstated. Weissman accepted the remittitur of his compensatory damages, but filed a timely cross-appeal from the District Court's vacatur of the punitive damages award.

## DISCUSSION

On appeal, Dawn Joy argues primarily that it was entitled to judgment as a matter of law because (1) Weissman was not disabled within the meaning of the ADA because his alleged disability—the heart attack he suffered—did not substantially limit a major life activity; (2) Weissman was not "regarded as" having such a substantially limiting impairment under the ADA; and (3) Dawn Joy did not retaliate, as a matter of law, by failing to look for a job for Weissman after he filed suit.[2] At oral argument, we asked the parties to brief an additional issue: whether we have jurisdiction to hear Dawn Joy's challenges to the sufficiency of the evidence because, as the record reflects, its Rule 50 and 59 motions were not filed within the ten-day time limit prescribed by the Federal Rules of Civil Procedure. We consider this issue first.

---

1. Dawn Joy raises no issues with respect to the award of attorney's fees and costs and we do not disturb that ruling on appeal.

2. Dawn Joy also challenges the District Court's denial of its motion for summary judgment with respect to Weissman's ADA claims, and contends that, since the District Court should have dismissed the federal ADA claims on summary judgment, the court should then have refused to exercise its supplemental jurisdiction over the state and city law claims pursuant to 28 U.S.C. § 1367. However, an appeal from the denial of a motion for summary judgment "will not ordinarily lie," and the "question of whether a party has met its burden must be answered

with reference to the evidence and the record as a whole rather than by looking to the pretrial submissions alone." *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 130 (2d Cir.1999) (internal quotation marks omitted). Accordingly, "[t]he district court's judgment on the verdict after a full trial on the merits ... supersedes the earlier summary judgment proceedings." *Id.* (internal quotation marks omitted). Dawn Joy thus cannot challenge the District Court's summary judgment decision, and it cannot challenge the District Court's alleged failure at that point to dismiss the state and city law claims pursuant to § 1367.

## I. *Jurisdiction*

Rule 50(b) of the Federal Rules of Civil Procedure provides that a party which had previously made a motion for judgment as a matter of law "may renew its request ... by filing a motion no later than 10 days after entry of judgment." Similarly, Rule 59(b) requires that "[a]ny motion for a new trial shall be filed no later than 10 days after entry of the judgment." Federal Rule of Civil Procedure 6(b), which governs the enlargement of time to file motions, specifically states that a district court "may not extend the time for taking any action under Rules 50(b) and ... 59(b) ..., except to the extent and under the conditions stated in them." Neither Rule 50(b) nor Rule 59(b) gives a district court the power to grant an extension, and we have stated that Rule 6(b) makes the "ten-day time limitation[ ] jurisdictional so that the failure to make a timely motion divests the district court of power to modify the trial verdict." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1346 (2d Cir.1993); accord *Fruit of the Loom, Inc. v. American Mktg. Enters., Inc.*, 192 F.3d 73, 75–76 (2d Cir.1999); *Meriwether v. Coughlin*, 879 F.2d 1037, 1041 (2d Cir.1989) (A request for an extension of time to file a motion seeking [judgment as a matter of law under Rule 50(b) ] or a new trial [under Rule 59] is ineffective even if it is received without objection and granted by the court.); *Lapiczak v. Zaist*, 451 F.2d 79, 80 (2d Cir.1971) (acknowledging that the rules against enlargement of time are "mandatory and jurisdictional" and "cannot be circumvented regardless of excuse"). Thus, even if the District court extended the time in which the movant could make the motion, any reliance on that extension "is flawed ... because it fails to recognize that the Rule 50(b) and 59 time limitations are jurisdictional and that excuses are therefore unavailing." *Rodick*, 1 F.3d at 1347.

In this case, on May 18, 1998, after the verdict was read, the District Court extended the time for Dawn Joy to file its post-trial motions to thirty days. The following exchange took place:

The Court: Anything further?

Counsel for defendant: Yes, your honor. At this point, your Honor, I don't know exactly what your Honor's procedure is, but obviously the defendant is going to want to make various post-trial motions. Among them, I believe, in accordance with Rules 50 to 59 of the Federal Rules of Civil Procedure, those that are applicable. My recollection is that those have to be made within 10 days of the verdict.

The Court: Unless that time is extended.

Counsel for defendant: Yes. I would ask for 30 days, if that is not too unfair or unkind. I don't know what my adversary has to say to that.

The Court: Any objection to that?

Counsel for plaintiff: No objection.

The Court: I will extend it to 30 days.

Counsel for defendant: Thank you, your Honor.

Trial Transcript at 549. Subsequently, the District Court, on consent but without colloquy with counsel, as far as the record reflects, granted a second extension of time and the motion was not filed until June 24, 1998. Since the judgment was entered on May 21, 1998, the motion was plainly filed well after the ten-day time limit provided for by the Federal Rules of Civil Procedure.

Dawn Joy asserts that we should treat its exchange with the District Court on May 18, 1998, when it asked for the initial extension of time, as a "timely oral motion" for judgment as a matter of law. We disagree. Dawn Joy relies primarily on our conclusion in *Meriwether* that counsel had made a Rule 50(b) motion—inartful as it was—when he told the district court, "I would, your Honor, like to at this time note that defendants wish to move for a judgment notwithstanding the verdict." 879 F.2d at 1040. More recently, however, in *Rodick*, we rejected the argument that

counsel's statement, "I would move at this point to move the 10 day period somewhat so that we can have additional time to make the motion," was an actual Rule 50 motion and found that it was an impressible request for an extension. *Rodick*, 1 F.3d at 1347; *see also Hulson v. Atchison, T. & S.F. Ry. Co.*, 289 F.2d 726, 727 (7th Cir.) ("I am merely asking for an extension of time in which to file my motion for a [n]ew [t]rial" was a request for an extension and not an actual motion), *cert. denied*, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961). Counsel's statements in *Rodick*, we noted, were distinguishable from the statements in *Meriwether*, because counsel "spoke of the motion prospectively," *Rodick*, 1 F.3d at 1347.

■ This case is almost identical to *Rodick*, since defense counsel's statement to the court on May 18, 1998—"the defendant is going to want to make various post-trial motions"—is clearly prospective in nature and indicates an intention on counsel's part to make the motion at some future date to be set by the District Court. Accordingly, we reject Dawn Joy's argument that it made its motion orally on May 18, 1998, instead of on June 24, 1998 when the motion was ultimately filed.

In the alternative, Dawn Joy asks that we extend the "unique circumstances" rule of *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam), to the circumstances of this case such that we would deem its Rule 50(b) motion timely. *Thompson* involved the timeliness of a notice of appeal. The petitioner filed a new trial motion pursuant to Rule 59, which would have tolled the time for filing an appeal, "the district court assured the petitioner that his motion was filed in sufficient time to preserve his right to appeal," *Fruit of the Loom*, 192 F.3d at 76, and the petitioner "allowed the actual appeal deadline to pass in reliance on the court's assurance that his motion was timely," *Lichtenberg v. Besicorp Group, Inc.*, 204 F.3d 397, 402 (2d Cir.2000). However, the motion was actually untimely, and, under

Rule 6, the trial court lacked the power to extend the petitioner's time to file the post-trial motion. *See Thompson*, 375 U.S. at 385, 84 S.Ct. 397. Under these "unique circumstances," the court of appeals was not deprived of jurisdiction to hear the appeal. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 178, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989); *Lichtenberg*, 204 F.3d at 402.

■ We reject the application of the "unique circumstances" doctrine to the present case. At the outset, we note that this rule applies only to the jurisdiction of an appellate court over an otherwise untimely appeal, and it has never been applied to extend the jurisdiction of a district court to an untimely Rule 50 or 59 motion. *See Long Island Radio Co. v. NLRB*, 841 F.2d 474, 478–79 (2d Cir.1988) (noting that "there was no suggestion in *Thompson* that the district court, in misstating the timeliness of the new-trial motion, had succeeded in enlarging its own jurisdiction to entertain that motion"). We see no basis to extend the "unique circumstances" rule here. Moreover, even were we to consider the application of the doctrine of "unique circumstances," we would choose not to apply it here because—without deciding whether the District Court somehow misled Dawn Joy at the May 18, 1998 colloquy—Dawn Joy made a second request for an extension of time in the form of a signed stipulation submitted by the parties and approved by the court, apparently without a hearing or a conference where anything "unique" might have occurred. We have held that "[t]he fact that the court simply signed orders presented to it, purporting to grant the parties' joint requests for relief, does not constitute 'unique circumstances.'" *Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 57 (2d Cir.1997).

■ In sum, we conclude that the District Court lacked the power to extend Dawn Joy's time to file its post-trial motion beyond the ten days provided for in

the Federal Rules of Civil Procedure. Because Dawn Joy did not file its Rule 50 and 59 motion until well beyond the ten-day limit, the motion was untimely, thereby "divest[ing] the [D]istrict [C]ourt of power to modify the trial verdict." *Rodick*, 1 F.3d at 1346. Accordingly, we vacate the District Court's modifications to the verdict pursuant to its ruling on Dawn Joy's post-trial motion. *Cf. id.* at 1346 n. 1.

■ Nevertheless, while Dawn Joy's failure to file a timely motion deprived the District Court of jurisdiction to alter or amend the jury's verdict, the fact that the District Court lacked such jurisdiction does not necessarily mean that we cannot consider Dawn Joy's insufficiency of the evidence argument on appeal. In the ordinary case, the party opposing the Rule 50 motion will object in the district court and on appeal to the timeliness of the motion or to some other procedural default in the making of that motion; under those circumstances, where a proper objection to the default has been lodged, we can only "overlook such a default in order to prevent a manifest injustice in cases where a jury's verdict is wholly without legal support." *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir.1999) (internal quotation marks and alterations omitted) (failure to renew Rule 50 motion at close of evidence and after entry of judgment); *see also Rodick*, 1 F.3d at 1347 (failure to file timely Rule 50 motion precludes consideration of question in the motion except where necessary to prevent "manifest injustice").

■ Here, however, Weissman did not raise the issue of the timeliness of the post-trial motion either as the party opposing the Rule 50 motion in the District Court or as the appellee in this appeal. In considering the analogous requirement to renew a Rule 50 or 59 motion after the jury's verdict, which we have held is necessary to preserve a challenge to the sufficiency of the evidence for purposes of appeal, *see Varda, Inc. v. Insurance Co. of*

*North Am.*, 45 F.3d 634, 638 (2d Cir.1995), we have concluded that although such a renewed motion "is mandatory, it is not jurisdictional" to our consideration of a sufficiency claim, *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir.), *cert. denied*, 525 U.S. 1001, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998). Thus, the renewal requirement "can be waived" absent an objection by the appellee. *See id.* Likewise, we conclude here, as in the similar circumstance present in *Norton*, that a *timely* Rule 50 or 59 motion is a mandatory but not a jurisdictional requirement with respect to our review of the sufficiency of the evidence. Because Weissman failed to object to the timeliness of Dawn Joy's post-trial motion—and indeed, agreed to extend the time in which it could be filed—he "has not properly preserved his right to object to the appellant's attempt to claim insufficiency of the evidence." *Id.* at 117 (emphasis omitted).

Accordingly, we proceed to consider Dawn Joy's challenges to the sufficiency of the evidence.

## II.   *Sufficiency of the Evidence*

■ Dawn Joy posits a number of reasons why it was entitled to judgment as a matter of law, including that (1) Weissman was not disabled within the meaning of the ADA because he did not have. an impairment that substantially limited a major life activity; (2) Weissman was not "regarded as" having such an impairment under the ADA; (3) Weissman was also not disabled or "regarded as" disabled pursuant to the NYHRL and the Administrative Code; and (4) Dawn Joy did not retaliate, as a matter of law, by failing to look for a job for Weissman after he filed his suit. Because of the peculiar procedural posture of this case, in which the District Court granted Dawn Joy's motion for judgment as a matter of law with respect to the punitive damages verdict even though it lacked jurisdiction to do so, we deem Dawn Joy's challenge to apply to the sufficiency of the evidence supporting the

punitive damages award as well. We will upset the jury's verdict only if "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154 (2d Cir.1994) (internal quotation marks omitted). In making this determination, we consider whether "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in [the opposing party's] favor." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir.1998).

### A. *Disability*

■ We may quickly deal with Dawn Joy's first three arguments. At the outset, we need not address whether a heart attack constitutes a "disability" under the ADA. Although Dawn Joy argues on appeal that Weissman's impairment was not a disability under the ADA and that Weissman was not "regarded as" disabled under the ADA, the District Court charged the jury—without objection—using the definition of "disability" under the NYHRL and the Administrative Code. The District Court correctly concluded that because the term "disability" is "'more broadly defined'" under the NYHRL and the Administrative Code than it is under the ADA, and Weissman pleaded violations of all three statutes, he only needed to satisfy the broader standard under the State and City statutes in order to prevail in this case. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 155 (2d Cir.1998) (quoting *State Div. of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 109, 480 N.E.2d 695 (1985)); *see also Hazeldine v. Beverage Media, Ltd.,* 954 F.Supp. 697, 706 (S.D.N.Y.1997) (noting that both the NYHRL's and the Administrative Code's definitions of "disability" are broader than the ADA's definition). For this reason, we consider whether the evidence was sufficient to support the conclusion that Weissman was disabled under the NYHRL and the Administrative Code.[3]

"Disability" under the NYHRL is defined, in relevant part as "(a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques ... or (c) a condition regarded by others as such an impairment...." N.Y. Exec. Law § 292(21) (McKinney Supp.1999). The Administrative Code contains a similar definition of "disability": "any physical, medical, mental or psychological impairment, or a history or record of such impairment." Administrative Code § 8–102(16)(a). A "physical, medical, mental or psychological impairment" is defined as "an impairment of any system of the body; including, but not limited to ... the cardiovascular system." Administrative Code § 8–102(16)(b)(1).

■ Under either of these definitions, it is plain that there was sufficient evidence for the jury to find that Weissman's heart attack was a physical or medical impairment and therefore a disability. Moreover, there was ample evidence for the jury to conclude that Weissman was "regarded as" disabled. For example, Weissman testified that Alan Kleinberg, who oversaw the sales force at Sherry Martin and was in charge of hiring and the administration of sales personnel, told Weissman, "[Y]our doctor says it might be four to five weeks [until you return from

---

**3.** To the extent that Dawn Joy argues that the District Court should not have exercised its supplemental jurisdiction over the NYHRL and Administrative Code claims pursuant to 28 U.S.C. § 1367, we disagree. The District Court did not abuse its discretion by not dismissing those claims, particularly where it denied Dawn Joy's motion for summary judgment with respect to the federal ADA claims. *See generally Purgess v. Sharrock,* 33 F.3d 134, 138–39 (2d Cir.1994).

the heart attack], but it may be four to five months or it may be never and we can't wait, so as of today consider yourself fired." Jt.App. 134.

### B. *Retaliation*

■■■■ We turn next to Dawn Joy's contention that the evidence was not sufficient to show retaliation. The ADA provides that "[n]o person shall discriminate against any individual because such individual ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir.1999); accord *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir.1999). "[A] plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law." *Sarno*, 183 F.3d at 159 (internal quotation marks omitted) (second alteration in original). Thus, even if Weissman has failed to prove that there was a violation of the ADA, the defendant may still have retaliated against Weissman for engaging in protected conduct. The NYHRL, N.Y. Exec. Law § 296(7), and Administrative Code § 8–107(7) contain anti-retaliation provisions substantially similar to the ADA's provision.

■■■■ A claim of refusal to rehire an individual following the filing of an employ-ment discrimination charge may be a basis for a claim of retaliation. *See, e.g., Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996) (refusal to rehire after the plaintiff filed an EEOC charge was basis for retaliation claim); *cf. Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir.1999) (concluding that a complaint stated a claim that certain "denials of employment ... were in retaliation for [a prior] administrative complaint to the DHR/EEOC").

■■■■ The evidence at trial, viewed in the light most favorable to Weissman, was sufficient to establish a claim of retaliation. Kleinberg, the second-in-command at the Sherry Martin Division, promised Weissman when firing him that Dawn Joy would help him find a position in Sherry Martin or elsewhere in Dawn Joy. Tracy Walters, the head of the Sherry Martin Division, also testified that she was looking for a job for Weissman. On April 16, 1993, Weissman mailed a letter to Kleinberg that stated that he was "ready to return to work." Jt.App. 260. After receiving the letter, Kleinberg called Weissman, but on April 22, 1993, Weissman filed a charge with the New York City Commission on Human Rights. When Weissman finally spoke to Kleinberg, Kleinberg told Weissman that Dawn Joy's counsel had recommended that Kleinberg no longer talk to Weissman. Walters also testified that she stopped looking for a position for Weissman. Although additional sales positions opened up at the company, the company made no effort to hire Weissman and ceased its effort to find him a position. Thus, Dawn Joy officials, specifically Kleinberg, opted not to attempt to rehire Weissman after he filed his complaint with the NYCCHR. The jury could reasonably infer that the decision was made because Weissman chose to file a charge with the Commission on Human Rights.[4]

---

4. Dawn Joy asserts that it should be immune from a charge of retaliation because it declined to look for a new position for Weissman on the advice of counsel. However, while Dawn Joy's consultation with counsel might show that the defendant lacked the subjective intent to retaliate against Weissman—a fact which may be relevant to the

### C. *Punitive Damages*

Finally, we consider the propriety of the jury's award of $150,000 in punitive damages. The District Court, in its ruling on Dawn Joy's Rule 50 motion, concluded that the evidence of conduct warranting· punitive damages was not sufficient and that the award should be overturned.

At the outset, the parties dispute whether, in reaching this conclusion, the District Court applied the federal standard for punitive damages set forth in the ADA or the standard for punitive damages under New York law. While we are not bound by the standard used by the District Court in its jurisdictionally deficient order, the actual law of punitive damages to be applied is relevant because the total amount of punitive damages awarded by the jury can be upheld, if at all, only under the punitive damages provision of the Administrative Code, § 8–502(a). Unlike the ADA, which, for a company the size of Dawn Joy, caps punitive damages awards at $100,000, *see* 42 U.S.C. § 1981a(b)(3)(B), and the NYHRL, under which punitive damages are not available, *see Thoreson v. Penthouse Int'l, Ltd.,* 80 N.Y.2d 490, 496, 591 N.Y.S.2d 978, 979, 606 N.E.2d 1369 (1992), the Administrative Code provides for punitive damages and does not set a limit on the amount that can be awarded. However, the Administrative Code does not provide a standard to use in assessing whether such damages are warranted. We note that one judge of this court has concluded that the New York law of punitive damages would apply to the Administrative Code, and that the federal and state standards for a finding of punitive damages are "virtually identical." · *See Greenbaum v. Svenska Handelsbanken, NY,* 67 F.Supp.2d 228, 262 (S.D.N.Y.1999) (Sotomayor, *C.J.,* sitting by designation). Nevertheless, in this case, we need not decide what the appropriate standard is because

the parties appear to agree that the propriety of the award of punitive damages should be judged under the federal rule used by the ADA, 42 U.S.C. § 1981a(b)(1). Moreover, the District Court charged the jury with the federal law of punitive damages, without objection from the parties. Accordingly, for purposes of this appeal, we will give controlling effect to the federal standard.

Under federal law, an employer may be subject to an award of punitive damages for violating the ADA if it has acted with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Unlike the District Court, we now have the benefit of the Supreme Court's recent examination of this statute in *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999). The Court explained that § 1981a(b)(1) "provides for punitive awards based solely on an employer's state of mind," specifically, "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad,* 119 S.Ct. at 2124. Notably, while "th[is] section does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind," *id.,* "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages," *id.* at 2125.

Although it is a close question, we conclude that the evidence is not sufficient to sustain the jury's verdict with respect to punitive damages. Even viewing the evidence at trial in Weissman's favor, we simply cannot find support in the record to conclude that Dawn Joy acted with "malice or with reckless indifference" to federal law. Weissman concedes that, under his interpretation of the evidence—in which

---

determination of whether punitive damages are warranted for any retaliatory acts—it is not a defense to retaliation. To show retaliation, Weissman need only prove that Dawn

Joy undertook an adverse employment action against him because he filed a charge with the NYCCHR.

Dawn Joy "fired Weissman [after his heart attack] because the company was busy and could not afford to be shorthanded for an extended period of time"—his claim for punitive damages is "not . . . compelling." Weissman also agrees with the District Court that Dawn Joy's alleged retaliation "[a]rguably . . . would not support a finding of liability in punitive damages" because Dawn Joy contacted counsel prior to severing contact with Weissman and therefore could not have acted in reckless disregard for Weissman's rights. Nevertheless, Weissman argues that Dawn Joy's attempt at trial to portray him as a poor worker with an unpleasant demeanor was culpable conduct warranting punitive damages. In support of this proposition, Weissman relies entirely on Vasbinder v. Ambach, 926 F.2d 1333 (2d Cir.1991), in which we upheld an award of punitive damages where the plaintiff, a highly-rated employee who had contacted the FBI as a whistleblower, was stripped of significant duties by the defendants and was given damaging evaluations as a means to "deter other potential whistle-blowers and to disguise the retaliatory nature of their action from outsiders." Id. at 1343. However, the mistreatment of the plaintiff in Vasbinder occurred while he was still under the defendants' supervision, rather than at trial. The difference is significant because an employer defending against a claim of discrimination will often assert at trial a permissible reason for its action, and, to find for the plaintiff, the jury would have to reject that reason as pretextual. If punitive damages were warranted in such a scenario, then they would be warranted in every case. Thus, while the jury's rejection of the defendant's trial strategy might indicate the jury's belief that the defendant had no legitimate reason for undertaking an otherwise discriminatory course of action, that trial strategy itself could not be the basis for an award of punitive damages.

■ Hence, we are left with what Weissman himself describes as a "not . . . compelling" case for punitive damages: that Dawn Joy fired the plaintiff because, as Kleinberg told Weissman, "Your doctor says it may be four to five weeks, but it may be four to five months or it may be never and we can't wait." This statement merely indicates that Dawn Joy was firing Weissman because he suffered a heart attack and would possibly no longer be able to work; while this supports a finding of discrimination, it does not support a finding that Dawn Joy discriminated "in the face of a perceived risk that its actions will violate federal law." Kolstad, 119 S.Ct. at 2125. Moreover, the other evidence that Weissman points to as egregious, such as Dawn Joy's firing Weissman less than two weeks after he suffered a heart attack, its failure to contact Weissman's doctor to determine when Weissman could return to work, and its cancellation of his health insurance, do not support "an inference of the requisite 'evil motive.'" Id. at 2126. Again, these actions are consistent with an employer acting to protect itself against the possible long-term absence of an employee. In sum, we conclude that the evidence did not show that punitive damages were warranted and therefore we vacate the jury's award of such damages.[5]

## CONCLUSION

Because the District Court lacked jurisdiction to modify the trial verdict, we vacate the District Court's modifications of that verdict. However, Weissman failed to

---

5. Although we reach the same result as the District Court on this issue, we note that we disagree with the District Court's conclusion that punitive damages were not warranted because "a good deal of evidence showed that plaintiff was a bad-tempered and inadequate worker who was slated to be fired anyway." Weissman, 1999 WL 144488, at *2. Viewing the evidence in the light most favorable to Weissman, a reasonable jury might well have rejected this evidence in favor of Weissman's explanation that he was fired because of his heart attack. Rather, we base our decision on the absence of evidence indicating that Dawn Joy "discriminate[d] in the face of a perceived risk that its actions [would] violate" the plaintiff's rights.

object either in the District Court or on appeal to Dawn Joy's failure to file its post-trial motions in a timely manner, and, therefore, we have jurisdiction to consider Dawn Joy's sufficiency of the evidence claims. With respect to those claims, we uphold the jury's verdict on all grounds except for the award of punitive damages, as to which we conclude that the evidence was not sufficient to show that punitive damages were warranted.

Accordingly, we vacate the judgment and remand for the entry of a new judgment consistent with this opinion.