[Cite as *Bresler v. Rock*, 2018-Ohio-5138.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Darrell Bresler, | : | |
| Plaintiff-Appellant, | : | No. 16AP-806 |
| | | (C.P.C. No. 14CV-11632) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Brent Rock et al., | : | |
| Defendants-Appellees. | : | |

# D E C I S I O N

Rendered on December 20, 2018

**On brief**: *Law Offices of Russell A. Kelm, Russell A. Kelm,* and *Ian M. King*, for appellant. **Argued**: *Russell A. Kelm.*

**On brief**: *Frost Brown Todd LLC, Catherine F. Burgett, Anne E. Duprey*, and *Matthew C. Blickensderfer*, for appellees. **Argued**: *Catherine F. Burgett.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, P.J.

{¶ 1} This is an appeal by plaintiff-appellant, Darrell Bresler, from decisions and entries of the Franklin County Court of Common Pleas denying appellant's motion for new trial and entering judgment in favor of defendants-appellees, Brent Rock, Daniel Taylor, and Samie Solomon (collectively "appellees"), on appellant's claim for age discrimination.

{¶ 2} On November 11, 2014, appellant filed a complaint, naming as defendants EveryWare Global, Inc., Anchor Hocking, LLC, Anchor Hocking Consumer Sales Corp. (collectively "the company"), Brent Rock (individually "Rock"), Casey Parsons (individually "Parsons"), Daniel Taylor (individually "Taylor"), and Samie Solomon

(individually "Solomon"). The complaint alleged appellant had been an employee of the company for over 41 years, and was terminated from his position on August 1, 2014 at the age of 60. Count 1 of the complaint alleged age discrimination, while Count 2 alleged appellant was owed deferred compensation and severance pay. Count 3 of the complaint requested a preliminary and permanent injunction.

{¶ 3} On December 31, 2014, appellees Rock, Taylor, Parsons, Solomon, and the company filed an answer, including affirmative defenses. On June 2, 2015, appellant filed a notice of dismissal of the company without prejudice based on the filing of bankruptcy petitions.

{¶ 4} On February 29, 2016, appellees Rock, Taylor, Parsons, and Solomon filed a motion for summary judgment. On March 28, 2016, appellant filed a memorandum in opposition to the summary judgment motion. By decision and entry filed May 6, 2016, the trial court denied in part and granted in part appellees' motion for summary judgment. Specifically, the trial court granted summary judgment as to appellee Parsons and dismissed him from the action but the court denied the remainder of appellees' motion for summary judgment.

{¶ 5} The matter came for trial before a jury beginning August 15, 2016. Appellant, age 62, testified on his own behalf. Appellant began employment with the company on September 3, 1973. Appellant initially worked various positions as a laborer; in 1978, he became a supervisor in the distribution center and subsequently worked as a warehouse shift supervisor.

{¶ 6} In 2003, while serving in the position of warehouse supervisor, appellant was laid off due to job cuts affecting approximately 60 salaried employees. One year later, he was rehired by the company and began work as a receiving supervisor. In 2010 or 2011, appellant became a shipping supervisor. Don Benner was also a shipping supervisor at that time, and appellant and Benner rotated shifts. Benner, who was approximately four years older than appellant, began his employment in 2007. Appellant's supervisor was Parsons.

{¶ 7} In May 2014, the company underwent a shut down due to financial distress, and the company furloughed most of the employees at the facility. By August 2014, many

of the furloughed employees had returned to work; appellant and three other individuals were not recalled to work.

{¶ 8} In early August 2014, Rock, the plant manager, contacted appellant and informed him he had been terminated. Appellant testified Rock mentioned "concessions had to be met," and he was one of the employees not coming back to work. (Tr. Vol. II at 299.) Appellant took "concessions" to mean financial considerations. Appellant testified that "[t]he union had taken concessions, and they agreed to take concessions themselves, so I assumed it was financial." (Tr. Vol. II at 299.) Appellant was offered a four-week severance package if he agreed to sign a form containing a release.

{¶ 9} Appellant contacted an attorney and sent a letter to the company in September 2014; the letter included allegations of age discrimination. In November 2014, appellant filed a lawsuit. In December 2014, appellant's attorney informed him the company requested he return to work under the condition he sign a release. In March 2015, appellant learned that Benner was no longer at the company due to illness, and Michelle Mitchell had been hired to replace Benner.

{¶ 10} On cross-examination, appellant acknowledged that none of the appellees ever made ageist comments to him. Appellant also acknowledged stating in deposition testimony the belief he was laid off due to age was based on conjecture. At the time of the furlough in May 2014, there were only two shipping supervisors, appellant, age 60, and Benner, age 65. After the furlough, there was only one shipping supervisor (Benner). In March 2015, the company offered appellant reinstatement and back pay in settlement of his lawsuit; appellant refused the offer.

{¶ 11} At trial, appellees presented the testimony of Rock, Taylor, and Solomon. In May 2014, Rock, the plant manager for the company's Lancaster facility, received notification the facility would be shut down immediately due to financial difficulties. Rock testified that "the whole facility went idle" at that time. (Tr. Vol. IV at 670.) Several weeks later, Rock was notified by Taylor that some operations would be starting up again; supervisors were recalled depending on the order in which departments resumed operations. Rock denied that any recall decisions were made based on age or salary.

{¶ 12} The first individual recalled in the warehouse was Stacy Sherwood, age 47, based on her "experience with the inventory, understanding locations, how the product

moved and flowed through the facility." (Tr. Vol. IV at 673.) Sherwood also filled in with the "receiving role." (Tr. Vol. IV at 673.) In July 2014, Julie Zavora, age "mid 40's," was recalled, and Benner was recalled soon thereafter. (Tr. Vol. IV at 674.) Zavora had experience in supervising production. Rock did not consider bringing appellant back to the positions filled by Sherwood or Zavora because he "brought them [Sherwood and Zavora] back to their own positions." (Tr. Vol. IV at 676.) Rock believed they could do their positions better than appellant.

{¶ 13} When questioned as to the reason Benner was recalled instead of appellant, Rock testified that "when we started the factory back up * * * we were looking for stability, we were looking for calm. When the people came back, they were upset, they were confused, and we were looking for stability." (Tr. Vol. IV at 679.) At the time Benner was recalled, Rock was not aware appellant would not be recalled.

{¶ 14} Four employees, including appellant, were not recalled. Rock made recommendations as to layoff candidates, but he did not make the ultimate decision with respect to those individuals. Some positions at the plant were combined with others. Mitchell assumed the shipping supervisor position after Benner became ill. Rock had no conversations with anyone about not hiring appellant. Rock denied selecting appellant to be discharged because of age or salary. In making rehiring decisions, Rock's concern was "[t]rying to keep the doors open." (Tr. Vol. IV at 688.)

{¶ 15} In 2014, Taylor was the senior vice president of operations for the company. Taylor testified he did not give Rock any instructions about who should be laid off or who should be brought back.

{¶ 16} Solomon became the interim CEO of EveryWare Global in February 2014. Solomon eventually became full-time CEO, and reported to the board of directors. In 2014, the company experienced problems with a bank loan structure. In order to obtain $20 million in additional cash or equity, the company was required to reduce costs and, "more specifically, reduce our headcount." (Tr. Vol. IV at 726.) Solomon negotiated concessions with the union, suppliers, and customers. Solomon testified that age played no role in individual layoffs. Solomon was not involved in the decision to lay off appellant, and he denied instructing Taylor or Rock to implement layoffs based on age or salary.

{¶ 17} At the close of appellant's case, the trial court granted appellees' motion for directed verdict on all claims relating to appellee Taylor. The trial court also granted appellees' motion for directed verdict as to counts two and three, and the court ruled punitive damages were inapplicable. Following deliberations, the jury returned verdicts in favor of appellees and against appellant as to his claim for age discrimination. The trial court entered judgment in favor of Rock, Taylor, and Solomon by entry filed August 26, 2016.

{¶ 18} On September 23, 2016, appellant filed a motion for new trial, asserting the trial court erred in failing to include a jury instruction on retaliation. On October 7, 2016, appellees filed a response to the motion for new trial. By decision and entry filed November 4, 2016, the trial court denied appellant's motion for new trial. The court held in part that, because the alleged retaliation of appellees against appellant for not agreeing to settlement terms "was not an issue before the court in the underlying case, the court finds inclusion of said instruction was not applicable to the underlying facts." (Decision & Entry Denying Pl's Mot. for New Trial at 3.)

{¶ 19} On appeal, appellant sets forth the following two assignments of error for this court's review:

> [I.] THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT "IT IS NOT AN ADVERSE EMPLOYMENT ACTION FOR AN EMPLOYER TO REQUIRE AN EMPLOYEE TO DISMISS A LAWSUIT OR WITHDRAW CLAIMS AS PART OF A CONDITION OF BEING REHIRED."
>
> [II.] THE TRIAL COURT ERRED BY REFUSING TO ALLOW THE JURY TO CONSIDER BRESLER'S RETALIATION CLAIM.

{¶ 20} Under the first assignment of error, appellant contends the trial court erred in granting appellees' request for a jury instruction. Specifically, appellant argues the court erred in instructing the jury it was not an adverse employment action for an employer to require an employee to dismiss a lawsuit or withdraw claims as part of a condition of being rehired. According to appellant, because the trial court agreed with this erroneous proposition of law, it implicitly granted a directed verdict on his claim that appellees' offer to rehire him if he dismissed his discrimination claim constituted retaliation.

{¶ 21} By way of background, at the start of trial, counsel for appellant raised the issue of whether a cause of action for retaliation had been pled. The trial court made an initial determination, based on a review of the complaint and the summary judgment pleadings, that such cause of action had not been pled. Following the presentation of appellant's case-in-chief, counsel for appellant made a motion to amend Count 3 of the complaint "to allege a damage count based on retaliation for not returning him to work and instead requiring that he dismiss his lawsuit to proceed." (Tr. Vol. IV at 640.) The trial court denied the request, noting in part that Count 3 of the complaint involved a request for "injunctive relief, not the cause of action, which was never prosecuted." (Tr. Vol. IV at 643.)

{¶ 22} As noted by appellees, appellant has not assigned as error the trial court's denial of his motion to amend the complaint. Rather, appellant challenges whether the trial court erred in providing a jury instruction requested by appellees. The record indicates appellees' request for the instruction was based in part on comments made by counsel for appellant during opening statements in which counsel stated the company would not "hire [appellant] back without getting a release, and we think that was inappropriate and illegal under Ohio law." (Tr. Vol. I at 62.)

{¶ 23} At issue is the following jury instruction provided by the trial court:

> It is not an adverse employment action for an employer to require an employee to dismiss a lawsuit or withdraw claims as part of a condition of being rehired. Employees and employers may lawfully negotiate settlements that include the waiver or release of age discrimination claims.

(Tr. Vol. V at 931.)

{¶ 24} Under Ohio law, "[a] trial court is obligated to provide jury instructions that correctly and completely state the law." *Father's House Internatl. v. Kurguz,* 10th Dist. No. 15AP-1046, 2016-Ohio-5945, ¶ 11. The issue as to whether a jury instruction "is legally correct and factually warranted is subject to de novo review." *Id.* This court's standard of review "when it is claimed that improper jury instructions were given is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights." *Id.*

{¶ 25} In support of his contention that the instruction was incorrect, appellant cites federal case law for the proposition that " '[a] claim of refusal to rehire an individual following the filing of an employment discrimination charge may be a basis for a claim of retaliation.' " *Carr v. Health Ins. Plan of Greater N.Y.*, S.D.N.Y. No. 99 Civ. 3706 (May 24, 2001), quoting *Weissman v. Dawn Joy Fashions,* 214 F.3d 224, 234 (2d Cir.2000).   Appellant contends his situation is no different than if he had filed a discrimination claim while still working for the company and being told he would be terminated if he did not dismiss the claim which, according to appellant, would be clear retaliation for filing a claim.

{¶ 26} In response, appellees argue that Sixth Circuit precedent and Ohio law directly support the position that employers may offer re-employment and back pay conditioned upon settlement and a release of claims.  In support, appellees rely in part upon *Graves v. Fleetguard, Inc.*, 6th Cir. No. 98-5893 (Oct. 21, 1999), a decision of the Sixth Circuit Court of Appeals which, appellees maintain, is materially indistinguishable from the factual background in this case.

{¶ 27} We initially consider the Sixth Circuit's decision in *Graves.*  Under the facts of that case, the plaintiff was hired in 1973 by Fleetguard, Inc. ("Fleetguard"). In 1995, Fleetguard began a restructuring and reorganization of its engineering division to improve efficiency, resulting in a reduction in force ("RIF").  The plaintiff's position was eliminated in October 1995 due to the RIF, and he was 45 years of age at the time.  In December 1995, the plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") against Fleetguard and its parent company.  In March 1996, Fleetguard offered the plaintiff a position "on the condition that he drop his discrimination charges."  *Id.*  The plaintiff declined the offer and subsequently filed a complaint in federal court against Fleetguard and its parent company alleging age discrimination and a claim for retaliation based on the defendants' refusal to offer him a new position unless he dismissed his age discrimination claim.  The district court granted the defendants' motion for summary judgment, holding the plaintiff failed to establish a prima facie case of age discrimination or retaliation.

{¶ 28} On appeal, the plaintiff challenged the district court's grant of summary judgment as to the retaliation claim on the basis that Fleetguard unlawfully retaliated

against him by offering him the position of quality manager only on the condition he drop his discrimination claims. The plaintiff further argued that he "established a prima facie case of retaliation because he was qualified for the Quality Manager job, he was entitled to it unconditionally, and Fleetguard's refusal to make him an unconditional offer amounted to an 'adverse employment action.' " *Id.*

{¶ 29} In *Graves,* the Sixth Circuit rejected the plaintiff's argument that he suffered an adverse employment action, holding in part:

> Graves's retaliation claim must fail as a matter of law because he cannot demonstrate that Fleetguard took an employment action that was adverse to him. Fleetguard was under no obligation to transfer or rehire him at all after its RIF. *See Barnes v. Gencorp, Inc.,* 896 F.2d 1457, 1469 (6th Cir.1990) ("This Circuit has clearly established that an employer has no duty under ADEA to permit an employee to transfer to another position or to displace workers with less seniority when the employee's position is eliminated as part of work force reduction."). Since Fleetguard had no duty to offer Graves any further employment, its failure to make such an offer would not have been an adverse employment action. Certainly, then, Fleetguard's offering him a position, but with a condition attached, was not an adverse employment action. *See Hansen v. Vanderbilt University,* 961 F.Supp. 1149, 1153 (M.D. Tenn.1997) (holding that it is not an adverse employment action for an employer to require employee to withdraw EEOC claim in order to have recommended settlement award implemented). We have also recognized that employees and employers may lawfully negotiate settlements that include the waiver or release of ADEA claims. * * * Fleetguard's conditional proposal of employment was a legitimate settlement offer designed to benefit both parties. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52, 39 L.Ed.2d 147, 94 S.Ct. 1011 (1974) (holding that employees may waive a cause of action for discrimination as part of a voluntary settlement agreement).
>
> Because Graves was terminated as a result of a legitimate RIF, and because Fleetguard was under no obligation to rehire Graves for another position, evidence of a conditional offer of new employment cannot sustain a claim for retaliation under the EEOC * * *.

{¶ 30} In another Sixth Circuit case, *EEOC v. Sundance Rehab. Corp.,* 466 F.3d 490 (6th Cir.2006), the employer had offered a separation agreement to employees whose

employment was terminated due to a RIF; the separation agreement offered severance pay in exchange for "promises not to sue or file an administrative charge." *Id.* at 492. The EEOC sued the employer, alleging the separation agreement the employer offered to the discharged employees in exchange for severance pay not otherwise owed violated various statutes, including the Age Discrimination in Employment Act. The district court held the separation agreement constituted "facial retaliation under the antiretaliation statutory provisions to the extent that it conditions severance pay on a promise not to file a charge with the EEOC." *Id.*

{¶ 31} On further appeal, the Sixth Circuit Court of Appeals reversed, holding in part the EEOC was unable to establish a prima facie case of retaliation. In its decision, the court observed that "[s]everal courts have found that declining to pay severance or settlement amounts (not otherwise due) when an employee refused to sign a waiver or release does not amount to an adverse employment action in the retaliation context." *Id.* at 502. Drawing on that line of cases, the court in *Sundance* held the employer's refusal to pay the employee severance pay not otherwise due or promised when she did not sign the separation agreement "left her in the same position that she had been in before the offer of the free-standing Separation Agreement. This was not a benefit given or owed to all employees, that was then withdrawn because of some protected conduct." *Id.* Thus, the federal court concluded, the employee "was not adversely affected, and * * * the denial of severance pay was not an adverse action for the purpose of the retaliation analysis." *Id.*

{¶ 32} Ohio courts, as well as other federal courts, have reached similar conclusions. *See Montague v. Oakwood Club,* 8th Dist. No. 81370, 2003-Ohio-876, ¶ 28 (failure of an employer to voluntarily pay severance pay or benefits to employee who refuses to sign severance agreement does not constitute adverse employment action as a matter of law); *Many v. Erieview Joint Venture,* 8th Dist. No. 78281 (June 7, 2001) ("Conditioning a voluntary provision of severance pay to a lawfully terminated employee on the release of age discrimination claims is a permissible act."); *Hansen v. Vanderbilt Univ.,* 961 F.Supp. 1149, 1153 (M.D.Tenn.1997) ("requiring an employee to withdraw an EEOC claim in order to have a recommended settlement award implemented is not an adverse employment action"); *Davis v. Precoat Metals,* 328 F.Supp.2d 847, 852 (N.D.Ill.2004) ("Offering severance benefits in return for a general release of claims is

neither discriminatory nor retaliatory."); *Sicher v. Lynch*, N.D.Ill. No. 09 C 1825 (Mar. 9, 2011) ("Payments offered to a former employee in exchange for a release of legal claims—whether the parties call the payment a severance or a settlement—are a discretionary benefit and do not constitute adverse employment action where those payments are not required by a contract.").

{¶ 33} On review, we agree with appellees that Ohio and Sixth Circuit case law supports the proposition that employers may offer re-employment and back pay conditioned upon settlement and release of claims. Here, similar to the facts in *Graves,* the company was under "no obligation" to rehire appellant following the RIF.[1] *Graves.* As the company had "no duty" to offer employment to appellant, "its failure to make such an offer would not have been an adverse employment action." *Id.* As such, the trial court did not err in including the jury instruction at issue.

{¶ 34} In so holding, we find unpersuasive authorities relied on by appellant. We note that several of the cases cited by appellant involve circumstances in which an employer withheld benefits already promised. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir.2012) ("[w]ithholding a position that an employee would otherwise receive under company policy, particularly when it results in her no longer having a job, might well dissuade a reasonable worker from making or supporting a charge of discrimination"); *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir.1998) (withholding benefits to which employee otherwise entitled amounts to adverse personnel action that can support retaliation claim).

{¶ 35} As indicated above, however, federal courts have found that "declining to pay severance or settlement amounts (not otherwise due) when an employee refused to sign a waiver or release does not amount to an adverse employment action in the retaliation context." *Sundance* at 502. *See also Sicher* ("An employer's failure to grant an

---

[1] Appellees note, and we agree, there was no evidence appellant reapplied for his former position. Under similar circumstances, courts have found no "materially adverse employment action." *Jones v. Alabama Power Co.,* 282 Fed.Appx. 780, 785 (11th Cir.2008). *See also Abnet v. Unifaab Corp.*, W.D.Mich. No. 4:05-CV-11 (May 22, 2006) ("in order for any adverse employment activity to occur, Plaintiff needed to contact Defendant seeking to be rehired (not the other way around)"); *Lackey v. Jackson Cty.*, 104 Fed.Appx. 483, 490 (6th Cir.2004) (plaintiff's "insistence that [defendant's] statement in his deposition that he would not rehire [p]laintiff because of [p]laintiff's filing of the lawsuit is irrelevant * * * because [p]laintiff has not reapplied for his old position").

employee a discretionary benefit to which the employee is not automatically entitled is not an adverse employment action.").

{¶ 36} In the *Carr* decision cited by appellant, the Southern District of New York recognized its "duty to follow * * * binding precedent" based on law in that circuit holding that "an employer who fails to rehire an otherwise-qualified former employee who has brought litigation against the employer may be guilty of retaliation if that litigation is a reason for not rehiring the employee." *Carr,* citing *Weissman* at 234. The court in *Carr,* however, noted that it held so "reluctantly and with serious doubts about the efficacy of the *Weissman* rule." Specifically, the court expressed its concern "with extending the scope of an 'adverse employment action' to include a failure to rehire an individual in litigation with his former employer." *Id.*

{¶ 37} Other cases cited by appellant are inapposite to the facts in this case. *Vaasquez v. Bd. of Edn. for School Dist. U-46*, N.D.Ill. No. 16 C 7022 (Apr. 5, 2017) (former employee "entitled to explore whether she had the right to be rehired or whether such a decision was completely discretionary, in which case her retaliation claim would fail for lack of an adverse employment action"); *Tribble v. Cincinnati Bell Tel.*, S.D.Ohio No. 1:09-CV-568 (May 4, 2011) (not involving retaliation claim and based on finding that offer of reinstatement constituted an adverse employment action where settlement negotiated between union and employer included terms and conditions for the plaintiff's reinstatement that were significantly different than those afforded similarly situated male employees); *Andersen v. Midland Lutheran College*, D.C.Neb. No. 8:11CV93 (July 8, 2011) (involving student seeking readmission to nursing college in exchange for release of claims against college); *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724 (6th Cir.2006) (involving employee reinstated by arbitrator and holding that termination and reinstatement at 70 percent back pay constituted adverse action); *Cantrell v. Nissan N. Am. Inc.,* 145 Fed.Appx. 99, 106 (6th Cir.2005) (finding plaintiff raised inference that her termination may have been retaliatory for filing EEOC complaint).

{¶ 38} On review, we conclude the instruction at issue was a legally correct statement of the law, and the record does not suggest the instruction was misleading or confusing to the jury. Accordingly, appellant's first assignment of error is not well-taken and is overruled.

{¶ 39} Under the second assignment of error, appellant asserts the trial court erred in refusing to allow the jury to consider a claim for retaliation based on the company's failure to rehire him in contemplation of dropping his age discrimination claim. Appellant argues that Count 3 of his complaint provided appellees fair notice he would be pursuing a retaliation claim.

{¶ 40} In response, appellees argue appellant did not plead a retaliation claim but, instead, sought to add a retaliation claim for the first time on the eve of trial. Appellees further argue the fact appellant had not previously pled a retaliation claim based on a conditional offer of reinstatement is evidenced by the clear language of Count 3 of the complaint, in which appellant requested an injunction to preclude appellees from "retaliating" against appellant by refusing to rehire him and, instead, hiring substantially younger, less qualified applicants.

{¶ 41} As noted under the previous assignment of error, at the close of appellant's case-in-chief, counsel for appellant made a motion to amend the complaint to include a claim of retaliation. Counsel for appellant argued the motion was based on a claim "that was pled in the complaint. It's Count 3 originally." (Tr. Vol. IV at 639.) More specifically, counsel sought to "amend the complaint to allege a damage count based on retaliation for not returning him to work and instead requiring that he dismiss his lawsuit to proceed." (Tr. Vol. IV at 640.)

{¶ 42} In response, counsel for appellees argued that "[c]ount 3 was clearly a claim for an injunction. It was never prosecuted and never met any standard for an injunction at all." (Tr. Vol. IV at 640.) Counsel for appellees noted that "Michelle Mitchell was not hired until five months after that." (Tr. Vol. IV at 640.) Counsel further noted that when appellant was deposed in August 2015, "they knew Michelle was working at Anchor," but "[t]hey never amended the complaint before that." (Tr. Vol. IV at 641.)

{¶ 43} In reviewing Count 3 of appellant's complaint, the trial court determined that language regarding "anticipating retaliation" was part of a request for "injunctive relief, not the cause of action, which was never prosecuted." (Tr. Vol. IV at 643.) On review, we find no error by the trial court.

{¶ 44} In general, while a complaint "need not state with precision all elements that give rise to a legal basis for recovery, fair notice of the nature of the action must be

provided."  *McWreath v. Cortland Bank*, 11th Dist. No. 2010-T-0023, 2012-Ohio-3013, ¶ 40.

{¶ 45} As noted by the trial court, Count 3 of the complaint sought a "preliminary and permanent injunction."  In general, injunctive relief is a remedy, not a cause of action.  *See, e.g., Premier Health Care Servs. v. Schneiderman,* 2d Dist. No. 18795 (Aug. 21, 2001) ("A preliminary injunction is a remedy; it is not a cause of action or a claim for relief.").  Further, as observed by appellees, the language of Count 3 of the complaint, to the extent it employs the word "retaliate," requests injunctive relief to preclude the company from retaliating against appellant by "refusing to re-hire him * * * and * * * instead seek to hire substantially younger employees who are less qualified than plaintiff." (Compl. at ¶ 29.)  In this respect, the complaint requested "a preliminary and permanent injunction * * * enjoining defendants from hiring any substantially younger less qualified employees for any position for which plaintiff is qualified."  (Compl. at ¶ 29.)  Even liberally construed, Count 3 did not give appellees fair notice as to a claim by appellant for retaliation based on the company's offer of re-employment conditioned on settlement of his claim, nor does the record reflect that appellees would have been aware, prior to the eve of trial, of appellant's attempt to bring such a claim.  Accordingly, the trial court did not err in ruling on appellant's request to pursue a claim for retaliation.

{¶ 46} Appellant's second assignment of error is not well-taken and is overruled.

{¶ 47} Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____