

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2007

# Ferko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2303

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ferko v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1182.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2303

———

ENTELA FERKO, YLLI FERKO, KLAUDIA FERKO,

Petitioners

v.

ALBERTO R. GONZALES, Attorney General of the United States,

Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA Nos. A 95 872 966/967/968)
Immigration Judge: Esmerelda Cabrera

———

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2007

Before: MCKEE, AMBRO, Circuit Judges, and MICHEL,[*] Chief Circuit Judge.

(Filed: April 30, 2007)

———

OPINION OF THE COURT

———

MICHEL, Chief Circuit Judge.

_____

[*] The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Entela, Ylli, and Klaudia Ferko petition for review of an order for their removal. The immigration judge ("IJ") rejected the Ferkos' claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT")[1] based on her finding that the Ferkos' testimony, crucial to their case, simply was not credible. The Board of Immigration Appeals ("BIA") sustained the removal on the same basis. Because the IJ's adverse credibility determination is supported by substantial evidence, we will deny the petition.

I.

Because we write solely for the parties, we recite only those facts relevant to our analysis. On June 24, 1990, Ylli Ferko was dismissed from the police force in Tirana, Albania, for insubordination. Fearing reprisal, he attempted to escape across the border to Yugoslavia on September 29, 1990. He was captured before he could cross, and he was incarcerated for three months.

After his release, the Ferkos both obtained visas to go to Greece and moved to Athens on March 20, 1991. The Ferkos lived in Greece for about twelve years, and their daughter Klaudia was born there in 1993. Ylli worked as a truck driver and mechanic, and the Ferkos obtained the Greek equivalent of green cards in 1998.

The Ferkos, citizens of Albania, made multiple trips to the United States. Ylli and Entela first entered the United States in August of 2000 as tourists. Ylli returned to the

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85.

United States in September of 2001.  Both times, the Ferkos left and returned to Greece

without incident.  They did not seek asylum either time.  In March of 2002, the Ferkos

obtained B-2 tourist visas for all three members of the family, authorizing them to stay in

the United States for six months.  Ylli left for the United States on March 17, 2002; both

Entela and Klaudia remained behind in Greece.  Ylli did not apply for asylum.  Entela and

Klaudia then entered the United States on June 16, 2002.

Upon arrival, Entela applied for asylum on behalf of herself, her daughter, and

Ylli.  Meanwhile, on January 30, 2003, the Ferkos were placed in removal proceedings by

the Immigration and Naturalization Service ("INS") for overstaying their visas.  After

being granted leave to file, and actually filing in March of 2003, an amended asylum

application, a hearing was held before an IJ on December 1, 2004.  The IJ denied the

application and ordered the Ferkos' removal to Albania.[2]  They appealed to the BIA, but

the BIA also denied them relief.  The Ferkos then timely filed this appeal.  We have

jurisdiction under Section 242(a)(1) of the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1252(a)(1).

In addition to the above facts, the Ferkos also allege several other facts that were

disputed.  First, they allege that Ylli was tortured during his three month incarceration in

Albania in 1990; he testified that he was beaten severely and subjected to water torture.

Second, they allege that beginning in 1997 while in Greece, they began receiving

_____

[2] The Ferkos testified that they could not readmitted to Greece since their lengthy
absence from the country resulted in the revocation of their green cards.

3

repeated harassing and threatening phone calls from agents of the Albanian government. Third, they allege that on February 22, 2002, Albanian secret service operatives accosted Ylli and demanded that he write a newspaper article on their behalf and organize and lead a public demonstration in support of the Albanian government. Ylli refused. Finally, the Ferkos allege that following Ylli's last departure for the United States, Albanian secret service agents assaulted Entela and Klaudia at their home in Greece on June 2, 2002. Allegedly, the agents were seeking Ylli but threatened the entire family, thus prompting Entela and Klaudia to follow Ylli to the United States. The Ferkos admit, however, that they never reported any of the incidents in Greece to the Greek authorities. Aside from the June 2, 2002 incident, none of these alleged facts were mentioned in either the Ferkos' original or amended asylum application.

## II.

When, as here, the BIA has adopted the reasoning of the IJ in its decision, we review the decision of the IJ. Kibinda v. Att'y Gen. of the United States, 477 F.3d 113, 118-19 (3d Cir. 2007). The Ferkos applied for asylum, withholding of removal, and protection under the CAT.[3] The BIA's and IJ's decision was based on the IJ's adverse

_____

[3] To be eligible for asylum under Section 208 of the INA, 8 U.S.C. § 1158, the applicant must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." See 8 U.S.C. § 1101(a)(42)(A). To be eligible for withholding of removal under Section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), the applicant must demonstrate that his "life or freedom would be threatened in [the country of removal] because of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for relief under the CAT, the applicant

credibility determination against the Ferkos, finding that their testimony was not credible.

In reviewing an adverse credibility determination, we look for substantial evidence supporting the determination. Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004). The IJ is entitled to consider inconsistencies and omissions in the various written submissions and testimony submitted by an applicant. Id. However, this Court has warned that such inconsistencies may not be substantial evidence of lack of credibility when they can reasonably be attributed to language barriers, translation issues, psychological pressures, or the circumstances in which a statement was made. See Balasubramanrim v. INS, 143 F.3d 157, 162-64 (3d Cir. 1998).

Here, we hold that the inconsistencies between the statements in the Ferkos' amended asylum application and their testimony at the hearing before the IJ are so pronounced that they could not reasonably be the result of language issues or other mitigating circumstances. First, it is important to note that the Ferkos' amended application was submitted several months after their original application and with the aid of an attorney and interpreter. Further, the Ferkos had also been living in the United States for several months by that time—nearly a year in Ylli's case. The psychological and situational elements that reasonably explained the inconsistencies in Balasubramanrim did not exist here.

Second, most of the key allegations that, if proven, would support the requested

must demonstrate that it is more likely than not that he would be tortured if removed. 8 C.F.R. § 208.16(c)(2).

5

relief were wholly omitted from their amended application. At the December 1, 2004 hearing, upon questioning by their attorney and the IJ, the Ferkos for the first time alleged that Ylli had been tortured while in prison in Albania. The hearing was also the first time they mentioned the alleged campaign of threatening phone calls; likewise Ylli's alleged encounter with Albanian secret service agents in February of 2002 during which they supposedly threatened him. While translation issues could reasonably cause facts to be inaccurately described or misphrased, they are unlikely to have caused crucial and highly specific details to be omitted entirely as the Ferkos claim.

Finally, contradictory evidence also casts doubt onto the Ferkos' assertions. For example, if Ylli escaped to the United States for safety, it is illogical that he would leave his wife and daughter behind in Greece where, according to him, Albanian secret service agents were highly active. And it is unlikely that a truck driver and mechanic would be chosen to write a propaganda newspaper article such that his declining would inspire outrage and death threats. In addition, if the Ferkos had been receiving alarming and threatening phone calls since 1997, the fact that thereafter they came to the United States (twice in Ylli's case) but did not seek protection raises suspicions in light of the other inconsistencies in the record, as does the fact that these trips did not provoke any reaction from these alleged Albanian agents. All of these facts undermine the Ferkos' claim of a well-founded fear of persecution if removed to Albania.

The IJ's adverse credibility determination goes to the heart of each of the three claims made by the Ferkos and was well explained by the IJ. Given that this credibility

6

determination is supported by substantial evidence, we will deny the Ferkos' petition.